**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
In re                                                                                                Chapter 11

Ybrant Media Acquisition, Inc.,                                                    Case No. 16-

                Debtor.
-----------------------------------------------------------x

### DECLARATION OF SURESH K. REDDY
### PURSUANT TO RULE 1007-2 OF THE LOCAL BANKRUPTCY
### RULES FOR THE SOUTHERN DISTRICT OF NEW YORK

      Suresh K. Reddy declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that:

      1.      I am the Chief Executive Officer of Ybrant Media Acquisition, Inc., the debtor and debtor in possession (the "**Debtor**") in the above-captioned chapter 11 case, and am familiar with and responsible for the day-to-day operations, business, and financial affairs of the Debtor.

      2.      I submit this Declaration pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**") to assist this Court and other parties in interest in understanding the circumstances giving rise to the commencement of this chapter 11 case.

      3.      Except as set forth below, all facts set forth in this Declaration are based upon my personal knowledge and/or information provided to me concerning the operations and financial affairs of the Debtor. If called upon to testify, I would testify competently to the facts set forth below. I am authorized to submit this Declaration on behalf of the Debtor.

      4.      The Debtor, which maintains its offices at 2121 North Frontage Road, No. 326, Vail, CO 81657, is a corporation organized under the laws of the state of Delaware. Its

principal assets in the United States consisted of about $600,000 on deposit at ICICI Bank USA located in New York City.

5. The Debtor was incorporated in 2007 and is a wholly-owned subsidiary of Ybrant Digital Limited ("**Ybrant Digital**"), a leading global digital marketing company organized under the laws of India, whose shares are publicly traded on the Bombay Stock Exchange and the National Stock Exchange of India.

6. The Debtor was created for the purpose of purchasing and managing the assets of internet and media-related businesses. In that regard, the Debtor entered into a stock purchase agreement agreement (the "**SPA**") dated August 15, 2010 with Daum Global Holdings Corp. ("**Daum**"), a South Korean corporation, to purchase from it 100% of the issued and outstanding capital stock of Lycos, Inc. ("**Lycos**"), a well-known search engine and web portal. The exact purchase price was to be determined after the close of Lycos' 2010 fiscal year and calculated as six times Lycos' 2010 EBITDA (the "**Earnout Amount**"), less $20,000,000, which was due at closing.

7. Concurrently with the Debtor's execution of the SPA, Ybrant Digital, pursuant to a guaranty agreement dated August 15, 2010, guarantied the Debtor's obligation to pay Daum the Earnout Amount. The SPA was amended by a First Amendment to the SPA dated October 13, 2010 and a Second Amendment to the SPA dated November 30, 2010.

8. On October 14, 2010, the Debtor paid Daum $20,000,000 and Daum transferred the Lycos shares to the Debtor, but, pursuant to the terms of the SPA, retained a security interest in 44% of them (3,854,319) to secure the Debtor's payment obligation thereunder. At the closing, these shares were placed in escrow with Wells Fargo Bank N.A.,

2

pursuant to an escrow agreement. The Debtor's 4,905,498 shares, representing a 56% ownership interest in the company, are in the possession of Ybrant Digital.

9. The SPA provided a mechanism to calculate Lycos' 2010 EBITDA and resolve any dispute between the parties. First, the SPA required the Debtor to retain KPMG to audit the 2010 financial results of Lycos to ascertain EBITDA, which it did. Based on the KPMG audit, the Debtor calculated Lycos' 2010 EBITDA at $6.2 million, which would have yielded an Earnout Amount of $17.2 million.

10. Second, after the Debtor, in accordance with the SPA, notified Daum of its calculation, Daum responded by notifying the Debtor of its own $9.2 million 2010 EBITDA calculation, which yielded an Earnout Amount of approximately $35.2 million, $13.6 million more than what the Debtor believed was due. Under the SPA, the Debtor was required to pay the undisputed amount of $17.2 million, but did not do so.

11. Thereafter, Daum notified Ybrant Digital that the Debtor was in breach of the SPA and demanded payment of $17.2 million under the guaranty.

12. In an effort to resolve the dispute, the Debtor's representatives met with Daum in Soeul. The parties, however, were unable to reach an agreement and Daum initiated a request for arbitration with the Secretariat of the ICC International Court of Arbitration on January 3, 2012. In its request, Daum asserted that it was entitled to $33,623,583 as the Earnout Amount and to the release of the escrowed Lycos shares in partial payment thereof.

13. Thereafter, on September 24, 2014, the ICC International Court of Arbitration issued its Final Award,[1] pursuant to which it awarded Daum $33,547,883 (the "**Final Award**") as the Earnout Amount, as well as interest on the undisputed $17.2 million from

---

[1] Daum also sought and was granted two (2) prior awards by the ICC International Court of Arbitration in the amounts of $250,000 and $177,500, respectively, representing the Debtor's share of unpaid arbitration costs.

3

September 7, 2011 and interest on $16.3 million from October 9, 2014.  It also awarded Daum its legal fees in the amount of $905,731 and certain of its costs associated with the arbitration, together with interest thereon, in the amount of $855,000.  The ICC International Court of Arbitration ordered the Debtor to pay the award within 15 days and ordered Ybrant Digital, in the event that the Debtor failed to pay the Award, to make payment 20 days after a demand by Daum.  In the event of non-payment, the ICC International Court of Arbitration held that Daum was entitled to have the escrowed shared distributed to it by Wells Fargo Bank NA.

14. On May 9, 2013, Daum commenced an action in the United States District Court for the Southern District of New York (the "**District Court**"), No. 13 cv 3135, against the Debtor and Ybrant Digital to confirm, pursuant to New York Convention on Recognition and Enforcement of Foreign Arbitral Awards and 9 U.S.C. § 207, the first of the three awards entered by the ICC International Court of Arbitration in the amount of $250,000.  By memorandum and order dated February 20, 2014, the District Court granted the petition to confirm the $250,000 award and a judgment was entered against the Debtor on February 26, 2014.

15. Thereafter, Daum sought to confirm the second award in the amount of $177,500 and the District Court entered a judgment against the Debtor on April 18, 2014.

16. As to the Final Award, Daum filed a petition to confirm it on October 15, 2014, and the District Court entered a judgment against the Debtor $36,603,744.38 on May 6, 2015.

17. On or about October 26, 2014, Wells Fargo Bank NA released to Daum the 3,854,319 shares of Lycos that it had been holding pursuant to the escrow agreement.

18. On June 25, 2015, Daum commenced a special proceeding against the Debtor and Ybrant Digital, pursuant to NY CPLR § 5225 and FRCP 69(a), for delivery and

4

turnover by the Debtor of the Lycos shares and by Ybrant Digital of its shares in its subsidiaries, including the Debtor, and the District Court, by memorandum and order dated October 6, 2015, granted Daum's request for a turnover order and ordered the Debtor and Ybrant Digital to satisfy the judgment, less the value of the escrowed Lycos shares or deliver to the Marshall for sale stock certificates in their possession or control of sufficient value to satisfy the judgment plus interest, less the value of the escrowed Lycos shares.

19. Thereafter, on October 26, 2015, the United States Marshal Service served a writ of execution on ICICI Bank USA, 500 Fifth Avenue, New York, NY 10110, the bank at which the Debtor maintained its accounts, and seized $574,058.37.

20. On January 25, 2016, Daum moved in the District Court to appoint itself as receiver, pursuant to NY CPLR § 5228, of the Debtor's 56% ownership interest in Lycos. The Debtor's answer or response to this motion is due today, March 14, 2016.

21. After Daum moved to appoint itself as receiver, the parties engaged in settlement discussions, which are ongoing. The Debtor has commenced its chapter 11 case to afford it the breathing room necessary to complete settlement discussions with Daum and complete a capital raise through debt and/or equity financing with the assistance of Ybrant Digital. Proceeds of the financing will be available under a plan of reorganization to fund the settlement with Daum and satisfy other creditors.

22. Importantly, the financing will enable the Debtor to implement its business plan, a process that has been interrupted as a consequence of the litigation with Daum. The business plan envisions the Debtor as a platform for the acquisition and management of other similar internet and media-related businesses in order to capture the profit that can be realized through maximizing the economies of scale and synergy of multiple businesses.

**Information Required by Local Rule 1007-2**

23. Local Rule 1007-2 requires the Debtor to disclose certain information. This information is outlined below and set forth in the schedules attached hereto.

24. Pursuant to Local Rule 1007-2(a)(4), the Debtor is required to set forth certain the following information with respect to the holders of its twenty (20) largest unsecured claims, excluding claims of insiders: the creditor's name, address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), and telephone number; the name(s) of persons(s) familiar with the Debtor's accounts, if any; the amount of the claim; and an indication of whether the claim is contingent, unliquidated, disputed, or partially secured. Such information will be provided under separate cover.

25. Pursuant to Local Rule 1007-2(a)(5), the Debtor is required to set forth certain information with respect to each of the holders of its five (5) largest secured claims. There are no holders of secured claims.

26. Pursuant to Local Rule 1007-2(a)(6), the Debtor is required to set forth a summary of its assets and liabilities. The Debtor's assets consist of its shares of Lycos, which have a value of $38 million. The Debtor's liabilities consist of the judgments in favor of Daum, as discussed above, unsecured claims of third parties for services rendered of $165,320, and claims of affiliated entities.

27. Pursuant to Local Rule 1007-2(a)(7), the Debtor is required to disclose whether any of the Debtor's securities are publicly held. None of the Debtor's securities are publicly held.

28. Pursuant to Local Rule 1007-2(a)(8), the Debtor is required to set forth a list of all property in the possession or custody of any custodian, public officer, mortgagee,

pledgee, assignee of rents, secured creditor, or agent for any such entity, giving the name, address, and telephone number of such entity, and the location of the court in which any proceeding relating thereto is pending. None of the Debtor's property is so held.

29. Pursuant to Local Rule 1007-2(a)(9), the Debtor is required to set forth a list of the premises owned, leased, or held under other arrangement from which it operates its business. The Debtor does not operate its business from premises that it owns, leases, or holds under other arrangement.

30. Pursuant to Local Rule 1007-2(a)(10), the Debtor is required to disclose the location of its substantial assets, the location of its books and records, and the nature, location, and value of any assets held by the Debtor outside the territorial limits of the United States. The Debtor's substantial assets, which are its shares of Lycos, are in the possession of Ybrant Digital in India, as are its books and records.

31. Pursuant to Local Rule 1007-2(a)(11), the Debtor is required to set forth a list of the nature and present status of each action or proceeding, pending or threatened, against it or its property where a judgment against it or a seizure of its property may be imminent. Such information is set forth above.

32. Pursuant to Local Rule 1007-2(a)(12), the Debtor is required to disclose the names of the individuals who comprise its respective existing senior management, their tenure, and a brief summary of their relevant responsibilities and experience. As set forth above, I am the Chief Executive Officer and Chairman of the Board of Directors of the Debtor and am responsible for and direct all operational, financial, and administrative matters. I have been the Chief Executive Officer of the Debtor since 2007. Srinivasa Rao Yepuri is the Debtor's Chief Financial Officer.

33. Pursuant to Local Rule 1007-2(b)(1)-(2)(A), the Debtor is required to disclose the estimated amount of weekly payroll to employees (not including officers, directors, and stockholders) and the estimated amount to be paid to owners, directors, and financial and business consultants retained by it for the 30-day period following the filing of its chapter 11 petition.  Pursuant to Local Rule 1007-2(b)(3), the Debtor also is required to disclose for the 30-day period following the filing of its chapter 11 petition, a list of its estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that remain unpaid, other than professional fees.  There are no amounts that will be paid to owners, directors, and financial and business consultants retained by the Debtor for the 30-day period following the filing of its chapter 11 petition.  In addition, the Debtor will not have cash receipts and disbursements, net cash gain or loss, or obligations and receivables that are expected to accrue that remain unpaid, other than professional fees.

Dated:  New York, New York
       March 14, 2016

                                           /s/ Suresh K. Reddy
                                           Suresh K. Reddy,
                                           Chief Executive Officer