Hearing date: August 4, 2016
Time: 10:30 a.m.

THE LAW OFFICE OF BO-YONG PARK, P.C.
Attorneys for Judgment Creditor
Daum Global Holdings Corp.
2429A 2nd Street
Fort Lee, NJ 07024
(800) 615-6470
Bo-Yong Park
William J.T. Brown

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------ x
In Re:                                              :    Chapter 11
                                                    :
YBRANT MEDIA ACQUISITION, INC.,                     :    Case No. 16-10597 (SMB)
                                                    :
                        Debtor.                     :
------------------------------------------------ x

**JUDGMENT CREDITOR DAUM GLOBAL HOLDINGS CORP.'S OBJECTION TO DEBTOR'S MOTION FOR EXTENSION PURSUANT TO BANKRUPTCY CODE SECTION 1121 (D) OF EXCLUSIVE PERIODS WITHIN WHICH DEBTOR MAY FILE A PLAN OF REORGANIZATION AND SOLICIT ACCEPTANCE THEREOF**

Judgment Creditor Daum Global Holdings Corp. ("Daum") respectfully submits this objection to the motion of Debtor, Ybrant Media Acquisition, Inc. ("Debtor" or "Ybrant Media Acquisition"), dated July 12 and returnable August 4, 2016 for an extension pursuant to Bankruptcy Code section 1121(d) of the exclusive periods within which the Debtor may file a proposed plan of reorganization and solicit acceptance thereof ("Debtor Motion").

1. The ground of the objection is that the Debtor lacks good cause for grant of such extension, as required by Bankruptcy Code section 1121(d). The present case is a misuse of

Chapter 11 by a shell acquisition vehicle that has no business to rehabilitate and seeks to use Chapter 11 as a means to stave off its single major creditor whom it owes some $37 million while it and its Indian parent company pursue a scheme of judgment evasion.

**KEY FACTS**

2.      This is not a case in which a debtor seeks to use Chapter 11 to reorganize and rehabilitate its business. The Debtor's only business asset is 56% of the shares of a Virginia company headquartered in Waltham, Massachusetts and known as Lycos, Inc. ("Lycos"). See Debtor Motion, ¶16.

3.      Daum sold the shares of Lycos in 2010 to the Debtor, a shell company designated to act as acquisition vehicle for its parent company in India, Ybrant Digital Limited ("Ybrant Digital"). Debtor Motion, ¶¶7-8.

4.      The terms of sale were a down payment of $20 million and a promise of a further "earnout" payment to be determined based on financial performance of Lycos during 2010. Debtor Motion, ¶8. Payment to Daum of the "earnout" amount was guaranteed by the parent company, Ybrant Digital. Debtor Motion, ¶11.

5.      The Debtor correctly acknowledges that, when the Debtor and its parent company, Ybrant Digital, refused to pay the "earnout" payment the parties proceeded to ICC arbitration and in due course the arbitrators calculated the "earnout" amount and other cost and interest amounts owing to Daum and rendered three awards against the Debtor and its parent company for total amounts in excess of $37 million. Debtor Motion, ¶¶9-10. Those three arbitration awards establish joint and several liability against the Debtor and its parent company

2

and were duly confirmed by judgments of the federal district court for this district, Hon. Alison J. Nathan. Debtor Motion, ¶¶11-13. No appeal was taken.

6. When the Debtor and its parent company failed to pay the judgments, Judge Nathan on October 6, 2015 issued a "turnover order" compelling the Debtor and its parent to turn over to the U.S. Marshal for this District the share certificates they held in various subsidiary corporations in sufficient amount to pay off the judgments. See Turnover Order, Exhibit A hereto. The share certificates ordered to be turned over included, in the case of the parent company, 100% of the shares of the Debtor, and in the case of the Debtor, 56% of the shares of the original acquisition target, Lycos (44% of the Lycos shares having already been returned to Daum by the escrow agent after Debtor and its parent were determined by the arbitrators to have defaulted in payment). Id.

7. The Debtor and its parent defied and disobeyed the court's order and some five months later, as a further motion to appoint Daum as receiver of the share certificates of Lycos remaining in the hands of the Debtor was pending before Judge Nathan, those purporting to remain in control of the Debtor (even though they were in defiance of orders to turn over the shares of the Debtor to Daum) filed the present Chapter 11 case on March 14, 2016. Debtor Motion, ¶16.

8. The Debtor tries to justify its Chapter 11 petition as follows:

> Although the Debtor and Daum began settlement negotiations after Daum moved to appoint itself as receiver, they had not completed such negotiations prior to the March 14, 2016 return date [for the receivership motion]. Consequently, the Debtor commenced its chapter 11 case to afford it the breathing room necessary to continue negotiating the terms of a settlement agreement with Daum and complete a capital raise through debt and/or equity financing with

3

> the assistance of Ybrant Digital, which will be used to fund a consensual plan of reorganization.

Debtor Motion, ¶17.

9. The above statement of the Debtor suggests that there was an active settlement negotiation between the Debtor and Daum at the time of the Debtor's Chapter 11 petition. In fact, there was no such active negotiation. Daum, armed with the Turnover Order from Judge Nathan, had no desire to trade its $37 million judgment from the Federal district court for any vague alternative remedy of lesser worth and doubtful enforceability, as suggested by the judgment debtors. Daum had thus rejected such overtures from the Debtor and Ybrant Digital.

10. Daum is therefore most concerned by the Debtor's misrepresentation to this Court of the past and present facts related to settlement negotiation. While the present objection is limited and directed to Debtor's current motion, Daum reserves its right to formulate a broader objection and to move for dismissal of these Chapter 11 proceedings on grounds suggested by the above factual narrative and on grounds that the filing was made in bad faith, to frustrate collection efforts by a single major creditor, and not for the purposes contemplated by statute. As the Debtor readily admits, this is really a two party dispute between Daum and the Debtor; the petition was filed as a litigation tactic (… "breathing room" …); the Debtor has no employees, no assets except a scant majority of Lycos shares (which were ordered to be turned over to Daum by Judge Nathan), no sales or other revenue, thus, with some $37 million of debt there is no way it could be rehabilitated. Indeed, it is questionable whether Ybrant Digital, while defying Judge Nathan's order to turn over the shares of the Debtor to Daum, was legally qualified as a controlling shareholder to cause the Debtor to submit a Chapter 11 petition. Daum

4

as equitable owner of 100% of the Lycos shares (44% held outright by Daum[1] plus 56% subject to the Turnover Order) has never approved the Chapter 11 petition. In this regard, the Debtor and Ybrant Digital's disobedience of the Turnover Order appears to be a grave concern to Judge Nathan. See Judge Nathan's Order dated March 30, 2016, Exhibit B hereto.

**OBJECTION TO PENDING MOTION**

11.     Four months after the filing of a Chapter 11 petition which the Debtor says was "intended to afford the Debtor breathing room necessary to continue negotiating the terms of a settlement agreement with Daum", now the Debtor represents to the Court in its motion papers that:

> The Debtor and Daum have now agreed upon the terms of [] settlement under which the Debtor will pay Daum $16 million on account of its $37 million claim, pursuant to a consensual plan of reorganization: $5 million will be paid on confirmation and $11 million will be paid one (1) year later. The plan of reorganization will be funded by Ybrant Digital, which is obtaining an international bank guarantee with respect to the $11 million payment. The Debtor and Daum have been informed that Ybrant digital's financing should be in place in approximately two (2) months at which time the Debtor will be able to execute a settlement agreement and propose a consensual plan of reorganization, which the Debtor believes will be confirmable because Daum will vote in its favor.

Debtor Motion, ¶18.

12.     This sounds most optimistic. However, there is a problem: Daum has never "agreed" to the above terms. Indeed the Debtor representatives had made an overture of

---

[1] See Turnover Order, p. 6 ("Thus, upon Respondents' default, Petitioner [Daum] is entitled to the value of the Final Award, minus the value of the Escrowed Shares [44% of the Lycos shares] currently in its possession. At the current time, Respondents have failed to make required payments under the Final Award. Under paragraphs 173, 176, and 213 of the Final Award, Petitioner may retain possession of the Escrowed Shares and execute on the remaining value of the judgment. The Court therefore grants Petitioner's request for a Turnover Order.")

5

settlement with certain terms similar to those indicated above in March of this year (around the time when the Debtor filed this Chapter 11 petition).[2] Such overture was made in the form of a non-binding letter with its vague settlement terms expressed in bullet points. Daum quickly rejected such non-binding letter proposal in early April as insufficient and vague. Vague bullet points proposed in laymen's terms, which are not even intended to result in binding legal obligations, would not be sufficient to induce Daum to give up its $37 million judgment nor would they even begin to unwind the procedural complexities, which include this Chapter 11 proceeding and the actions pending in the Southern District Court of New York before Judge Nathan and the New York Supreme Court, Commercial Division (<u>Daum Global Holdings Corp. v. Ybrant Digital Limited and Ybrant Media Acquisition Inc</u>., Index No. 652940/2011) before Justice Jeffrey K. Oing. Although Daum is open to any negotiation, Daum has no plan to enter into a settlement agreement without full and complete review of legal and economic aspects of the terms thereof, including reliability of any future bank guarantee which would take the place of Daum's large Federal money judgments. Thus no document of settlement or of intent to settle has ever been signed so far. More importantly, after Daum's rejection of the Debtor and Ybrant Digital's questionable overture in early April this year the Debtor and Ybrant Digital have not made any further overtures. No binding settlement terms have ever been proposed. The bullet points have never been defined or substantiated. Therefore, Daum strongly objects to the Debtor's statements quoted in paragraphs 8 and 11 above to the extent that they suggest that there has been ongoing and progressing settlement negotiations or that the parties have "agreed" to any terms of settlement.

---

[2] Daum notes that the Debtor has breached the confidentiality of settlement discussions by disclosing it to the Court and to the public and accordingly considers itself free to reply on the same issues.

6

13. The Debtor's disclosure of its settlement overtures to Daum without Daum's approval and its misrepresentations to the Court and to the public as to the facts thereof reinforce Daum's concern that the Debtor's true intention in this Chapter 11 proceeding is to frustrate and delay enforcement of judgments from the Federal District Court while it transfers Lycos' intellectual property from the United States to India, rendering the Lycos shares held by Debtor worthless.  Indeed, Debtor's parent in India has already changed its own name to "Lycos Internet, Ltd," thus laying claim to the intangible goodwill of the company it bought but did not pay for.  Thus, Daum has no confidence in the Debtor's multiple representations to the Court as grounds for granting the current motion: "[t]he Debtor is seeking a short extension of the respective periods in order to memorialize a settlement agreement with Daum and anticipates filing a consensual plan of reorganization and related disclosure statement by mid-September" (Debtor Motion, ¶29); "the Debtor is making 'good faith progress'" (Debtor Motion, ¶30); "[the Debtor] easily can demonstrate that it has 'reasonable prospects for filing a plan' and 'has made progress in negotiations with its creditors'" (Debtor Motion, ¶32); "it is not seeking an extension in order to pressure creditors to submit to its demands or gain an unfair bargaining advantage" (Debtor Motion, ¶33).  For the past 4 months since the Debtor's filing of Chapter 11 petition, there has been no progress at all in the prospect of settlement.

14. If indeed Daum had agreed to settlement and the only remaining task was for the Debtor to "memorialize an agreement and file a plan of reorganization", surely the Debtor would not need an extension of the exclusivity period.

7

## **CONCLUSION**

15. For the reasons set forth above, Judgment Creditor Daum respectfully requests that the Court deny the Debtor's Motion and direct the Debtor to proceed with diligence on a nonexclusive basis to pursue settlement with Daum as to the $37 million judgment held by Daum.

16. Daum respectfully reserves its right to move for dismissal of these Chapter 11 proceedings in due course.

Respectfully submitted,

Dated: New York, New York  
July 26, 2016

THE LAW OFFICE OF BO-YONG PARK, P.C.

By: /s/Bo-Yong Park  
Bo-Yong Park (BP1622)

Bo-Yong Park (BP1622)  
William J.T. Brown (WB1306), Of Counsel  
2429A 2nd Street  
Fort Lee, NJ 07024  
(800) 615-6470  
Attorneys For Judgment Creditor  
Daum Global Holdings Corp.

8