ROSEN & ASSOCIATES, P.C.
Attorneys for the Debtor
 and Debtor in Possession
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Nancy L. Kourland

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x

In re                                                               Chapter 11


Ybrant Media Acquisition, Inc.,                                     Case No. 16-10597 (SMB)


                           Debtor.
--------------------------------------------------------x


**AMENDED DISCLOSURE STATEMENT WITH RESPECT TO**
**THE DEBTOR'S PLAN OF REORGANIZATION**

> **THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE DEBTOR'S PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BY THE BANKRUPTCY COURT**

# I. **INTRODUCTION**

A. General

      Ybrant Media Acquisition, Inc. (the "**Debtor**"), submits this Amended Disclosure Statement (the "**Disclosure Statement**"), pursuant to section 1125 of title 11 of the United State Code, 11 U.S.C. §§ 101 *et seq*. (the "**Bankruptcy Code**"), in connection with the solicitation of acceptances or rejections of its Plan of Reorganization dated November 4, 2016 (the "**Plan**"),[1] a copy of which is annexed hereto as Exhibit "A." The Plan has been filed with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

      **THIS DISCLOSURE STATEMENT IS NOT INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN BY EACH HOLDER OF A CLAIM ENTITLED TO VOTE THEREON, BUT IS INTENDED TO AID AND SUPPLEMENT SUCH REVIEW. THE DESCRIPTION OF THE PLAN HEREIN IS A SUMMARY ONLY AND HOLDERS OF CLAIMS AND OTHER PARTIES IN INTEREST ARE CAUTIONED TO REVIEW THE PLAN ITSELF TO UNDERSTAND COMPLETELY ITS PROVISIONS. THIS DISCLOSURE STATEMENT IS QUALIFIED ENTIRELY BY REFERENCE TO THE PLAN. THE TERMS OF THE PLAN CONTROL WHERE ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT. THE APPROVAL OF THE ADEQUACY OF DISCLOSURE CONTAINED IN THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MERITS OF THE PLAN.**

      **THE PLAN CONSTITUTES A VALID AND LEGALLY BINDING AGREEMENT ENFORCEABLE IN ACCORDANCE WITH ITS TERMS AND CONDITIONS.**

      This Disclosure Statement and the Plan remain subject to modification and amendment. All financial information provided herein constitutes, and all projections and assertions made by the Debtor herein, are based on the best information available to the Debtor as of the date of the filing of the Disclosure Statement and remain subject to revision. The Debtor will

---

[1] Capitalized terms used herein and not otherwise defined in the Disclosure Statement shall have the meaning ascribed to them in the Plan.

provide any missing information indicated as missing on or before the date of the hearing on this

Disclosure Statement, such other date as set forth in the Plan, or as otherwise directed by the

Bankruptcy Court.

By order dated _____, the Bankruptcy Court has approved this Disclosure

Statement as containing "adequate information."

B.  Overview

On March 14, 2016, the Debtor commenced in the Bankruptcy Court its voluntary

case under chapter 11 of the Bankruptcy Code.  The Debtor is continuing to operate its business

and manage its property as a debtor and debtor in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.  To date, no trustee, creditors' committee, or examiner has been

appointed in the Debtor's case.

The Debtor was incorporated in 2007 and is a wholly-owned subsidiary of Ybrant

Digital, a leading global digital marketing company organized under the laws of India, whose

shares are publicly traded on the Bombay Stock Exchange and the National Stock Exchange of

India.  The Debtor, which maintains its offices at 2121 North Frontage Road, No. 326, Vail, CO

81657, was created for the purpose of purchasing and managing the assets of internet and media-

related businesses.

In that regard, the Debtor entered into a stock purchase agreement (the "**SPA**")

dated August 15, 2010 with Daum, a South Korean corporation, to purchase from it 100% of the

issued and outstanding capital stock of Lycos, Inc. ("**Lycos**"), a well-known search engine and

web portal.  The exact purchase price was to be determined after the close of Lycos' 2010 fiscal

year and calculated as six times Lycos' 2010 EBITDA (the "**Earnout Amount**"), less

$20,000,000, which was due at closing.

Concurrently with the Debtor's execution of the SPA, Ybrant Digital, pursuant to a guaranty agreement dated August 15, 2010, guarantied the Debtor's obligation to pay Daum the Earnout Amount.  The SPA was amended by a First Amendment to the SPA dated October 13, 2010 and a Second Amendment to the SPA dated November 30, 2010.  On October 14, 2010, the Debtor paid Daum $20,000,000 and Daum transferred the Lycos shares to the Debtor, but, pursuant to the terms of the SPA, retained a security interest in 44% of them (3,854,319) to secure the Debtor's payment obligation thereunder.  At the closing, these shares were placed in escrow with Wells Fargo Bank N.A., pursuant to an escrow agreement.  The Debtor's 4,905,498 shares, representing a 56% ownership interest in Lycos, are in the possession of Ybrant Digital and comprise the Debtor's sole Asset.

The SPA provided a mechanism to calculate Lycos' 2010 EBITDA and resolve any dispute between the parties.  First, the SPA required the Debtor to retain KPMG to audit the 2010 financial results of Lycos to ascertain EBITDA, which it did.  Based on the KPMG audit, the Debtor calculated Lycos' 2010 EBITDA at $6.2 million, which would have yielded an Earnout Amount of $17.2 million.  Second, after the Debtor, in accordance with the SPA, notified Daum of its calculation, Daum responded by notifying the Debtor of its own $9.2 million 2010 EBITDA calculation, which yielded an Earnout Amount of approximately $35.2 million, $13.6 million more than what the Debtor believed was due.  Under the SPA, the Debtor was required to pay the undisputed amount of $17.2 million, but did not do so.

Thereafter, Daum notified Ybrant Digital that the Debtor was in breach of the SPA and demanded payment of $17.2 million under the guaranty.  In an effort to resolve the dispute, the Debtor's representatives met with Daum in Seoul.  The parties, however, were unable to reach an agreement and Daum commenced an action by filing a complaint in the

Supreme Court State of New York, County of New York (the "**State Court**") against the Debtor

and Ybrant Digital on October 26, 2011 (*Daum Global Holdings, Inc. v. Ybrant Digital Limited*

*and Ybrant Media Acquisition, Inc.*, Index No. 652940/2011), seeking, among other things, a

judgment against Ybrant Digital on its guaranty, damages for breach of an implied covenant of

good faith and fair dealing, and the entry of a preliminary injunction enjoining the Debtor and

Ybrant Digital from transferring the 4,905,498 shares of Lycos.

On October 27, 2012, the State Court entered an order to show cause that

temporarily restrained the Debtor and Ybrant Digital from taking cash or assets from Lycos, or

causing the same to be transferred outside of the ordinary course of business, or otherwise

diminishing its value.

Thereafter, on January 31, 2012, the Supreme Court of the State of New York,

after Daum posted a bond in the amount of $20,000,000, entered an order preliminarily enjoining

the Debtor and Ybrant Digital from taking cash or assets from Lycos, or causing the same to be

transferred outside of the ordinary course of business, or otherwise diminishing its value.

On January 3, 2012, Daum also initiated a request for arbitration with the

Secretariat of the ICC International Court of Arbitration.  In its request, Daum asserted that it

was entitled to $33,623,583 as the Earnout Amount and to the release of the escrowed Lycos

shares in partial payment thereof.  Thereafter, on September 24, 2014, the ICC International

Court of Arbitration issued its Final Award,[2] pursuant to which it awarded Daum $33,547,883

(the "**Final Award**") as the Earnout Amount, as well as interest on the undisputed $17.2 million

from September 7, 2011 and interest on $16.3 million from October 9, 2014.  It also awarded

---

[2] Daum also sought and was granted two (2) prior awards by the ICC International Court of Arbitration in the amounts of $250,000 and $177,500, respectively, representing the Debtor's share of unpaid arbitration costs.

Daum its legal fees in the amount of $905,731 and certain of its costs associated with the

arbitration, together with interest thereon, in the amount of $855,000.  The ICC International

Court of Arbitration ordered the Debtor to pay the award within fifteen (15) days and ordered

Ybrant Digital, in the event that the Debtor failed to pay the Award, to make payment twenty

(20) days after a demand by Daum.  In the event of non-payment, the ICC International Court of

Arbitration held that Daum was entitled to have the escrowed shares distributed to it by Wells

Fargo Bank N.A.

On May 9, 2013, Daum commenced an action in the District Court against the

Debtor and Ybrant Digital to confirm, pursuant to New York Convention on Recognition and

Enforcement of Foreign Arbitral Awards and 9 U.S.C. § 207, the first of the three awards entered

by the ICC International Court of Arbitration in the amount of $250,000.  By memorandum and

order dated February 20, 2014, the District Court granted the petition to confirm the $250,000

award and a judgment was entered against the Debtor on February 26, 2014.  Thereafter, Daum

sought to confirm the second award in the amount of $177,500 and the District Court entered a

judgment against the Debtor on April 18, 2014.

As to the Final Award, Daum filed a petition to confirm it on October 15, 2014

and the District Court entered a judgment against the Debtor in the amount of $36,603,744.38 on

May 6, 2015.  On or about October 26, ~~2014~~2015, Wells Fargo Bank N.A. released to Daum the

3,854,319 shares of Lycos that it had been holding pursuant to the escrow agreement.  Daum

believes that such shares have a value of approximately $~~76,4~~,000,000.

On June 25, 2015, Daum commenced a special proceeding against the Debtor and

Ybrant Digital, pursuant to NY CPLR § 5225 and FRCP 69(a), for delivery and turnover by the

Debtor of the Lycos shares and by Ybrant Digital of its shares in its subsidiaries, including the

6

Debtor.  The District Court, by memorandum and order dated October 6, 2015, granted Daum's

request for a turnover order and ordered the Debtor and Ybrant Digital to satisfy the judgment,

less the value of the escrowed Lycos shares or deliver to the Marshal for sale stock certificates in

their possession or control of sufficient value to satisfy the judgment plus interest, less the value

of the escrowed Lycos shares.  Thereafter, on October 26, 2015, the United States Marshal

Service served a writ of execution on ICICI Bank USA, 500 Fifth Avenue, New York, NY

10110, the bank at which the Debtor maintained its accounts, and seized $574,058.37. 20.

On January 25, 2016, Daum moved in the District Court to appoint itself as

receiver, pursuant to NY CPLR § 5228, of the Debtor's remaining 56% ownership interest in

Lycos.  The Debtor's answer or response was due on March 14, 2016.

After Daum moved to appoint itself as receiver, the parties engaged in settlement

discussions, which were ongoing on the Petition Date.  Although the Debtor and Daum had

begun settlement negotiations after Daum filed its motion, they had not completed negotiations

prior to the March 14, 2016 return date.  Consequently, the Debtor commenced its chapter 11

case on March 14, 2016 to enable it to continue negotiating a settlement agreement with Daum

and complete a capital raise through debt and/or equity financing with the assistance of Ybrant

Digital in order to fund a consensual plan of reorganization incorporating such settlement.

C.      Summary of the Plan's Classification and
        Treatment of Claims and Distribution Provisions

1. Classification and Treatment of Claims

The Plan provides that distributions will be made only to Holders of Allowed

Claims.  The distribution for each Allowed Claim is calculated by reference to the treatment of

the Class to which such Claim belongs.  The Allowed Claims that comprise the same Class will

be treated the same under the Plan.

        2. Summary of Distributions to be Made Pursuant to
           the Plan and Other Significant Provisions Thereof

      The following table sets forth a brief summary of the classification and treatment

of Claims and the consideration distributable to the Holders of such Claims under the Plan.  The

information set forth in the table is for ease of reference only.  Each Holder of a Claim should refer

to Section IV (C) hereof ("Classification and Treatment of Claims") and Article V of the Plan

("Treatment of Classes of Claims") for a full understanding of the classification and treatment of

Claims provided under the Plan.  The estimates set forth in the table may differ from actual

distributions by reason of, among other things, variations in the amounts of Allowed Claims and/or

the disallowance of Disputed Claims.

| CLASS | TYPE OF CLAIM | ESTIMATED ALLOWABLE AMOUNT (Approximate) | TREATMENT UNDER THE PLAN |
|---|---|---|---|
| N/A | Administrative Expense Claims | $50,000.00 | Each Holder of an Allowed Administrative Expense Claim for fees and reimbursement of expenses incurred by Professional Persons shall be paid by the Disbursing Agent on the Effective Date the amount of such Allowed Administrative Expense Claim in full, without interest, from Available Cash unless the Holder of such Allowed Administrative Expense Claim and the Debtor agree to a less favorable treatment of such Allowed Claim, in which case such Holder will be paid in accordance with such agreement. |
| N/A | Priority Tax Claims | $40,000.00 | Each Holder of an Allowed Priority Tax |

| | | | |
|---|---|---|---|
| | | | Claim shall be paid by the Disbursing Agent on the Effective Date the amount of such Allowed Priority Tax Claim in full from Available Cash unless the Holder of such Allowed Priority Tax Claim and the Debtor agree to a less favorable treatment of such Allowed Claim, in which case such Holder will be paid in accordance with such agreement. |
| N/A | United States Trustee fees payable by the Debtor under 28 U.S.C. § 1930 that have not been paid prior to the Effective Date | $1,000.00 | All fees payable by the Debtor under 28 U.S.C. § 1930 that have not been paid prior to the Effective Date shall be paid by the Reorganized Debtor in Cash on the Effective Date. Any future United States Trustee fees shall be paid with Available Cash on the Final Distribution Date. |
| Class 1 | Daum Unsecured Claim | $37,000,000.00 | The Debtor shall pay the Holder of the Allowed Daum Unsecured Claim (i) in full from Available Cash on the later of (a) the Effective Date or (b) ten (10) business days after such Unsecured Claim becomes an Allowed Unsecured Claim or (ii) upon such terms as may exist under an agreement between the Holder of the Allowed Daum Unsecured Claim and the Debtor or the Reorganized Debtor. ~~The Debtor shall pay the Holder of the Allowed Unsecured Claim of Daum from Available Cash in accordance with the terms and conditions of an agreement to be reached by and between the Debtor and the Holder of such Allowed Claim, which agreement shall be filed prior to the date of the hearing that shall be scheduled by the Bankruptcy Court, to consider the confirmation of the Plan.~~ |
| Class 2 | | $165,000.00 | |

| | | | |
|---|---|---|---|
| | Non-Insider Unsecured Claims | | The Debtor shall pay the Holders of Allowed Unsecured Claims of Non-Insiders (a) in full from Available Cash in twelve (12) consecutive, monthly installments without interest commencing on (i) the Effective Date or (ii) ten (10) business days after such Unsecured Claim becomes an Allowed Unsecured Claim or (b) upon such terms as may exist under an agreement between such Holder and the Debtor or Reorganized Debtor. |
| Class 3 | Insider Unsecured Claims | $2,659,000.00 | The Debtor shall pay the Holders of Allowed Unsecured Claims of Insiders (a) in full from Available Cash in twenty-four (24) consecutive, monthly installments without interest commencing on (i) the Effective Date or (ii) ten (10) business days after such Unsecured Claim becomes an Allowed Unsecured Claim or (b) upon such terms as may exist under an agreement between such Holder and the Debtor or Reorganized Debtor. |
| Class 4 | Interests | N/A | On the Effective Date, all of the Interests in the Debtor shall continue in full force and effect; however, the Holders thereof shall not receive any payment or property for and on account of such Interests. |

D.    Voting

        The Plan contains four (4) classes.  Class 1, which consists of the Unsecured Claim

of Daum, is unimpaired and, therefore, deemed to have accepted the Plan and not entitled to vote on

the Plan.  Class 2 consists of Non-Insider Unsecured Claims.  Class 2 is impaired by this Plan and

entitled to vote to accept or reject it.  Class 3 consists of the Unsecured Claims of Insiders.

Although Class 3 is impaired and entitled to vote, such votes shall not be counted. Class 4 consists

of the Interests. Class 4 is unimpaired by this Plan, deemed to have accepted the Plan, and not

entitled to vote to accept or reject it.

For a description of the Classes of Claims and Interests and their treatment under the

Plan, *see* Section I(C)(2) hereof ("Summary of the Plan's Classification and Treatment of Claims and

Interests and Distribution Provisions") and Section IV(B) hereof ("Classification and Treatment of

Claims and Interests").

D. Confirmation Hearing

Pursuant to section 1129(b) of the Bankruptcy Code, the Debtor will seek

confirmation of the Plan. The Bankruptcy Court has scheduled a hearing to consider confirmation

of the Plan on ⸺⸺January 10, 2017 at 10:00 a.m.⸺:⸺0⸺.m. (prevailing Eastern Time), at the

United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton

Custom House, Courtroom 617, One Bowling Green, New York, NY 10004. The hearing may be

adjourned from time to time without notice.

E. Recommendation

**THE DEBTOR BELIEVES THAT THE PLAN IS FAIR AND THAT

CONFIRMATION THEREOF IS IN THE BEST INTERESTS OF ALL CREDITORS.**

If the Plan is not confirmed, the Debtor believes the Chapter 11 Case will be

converted to one under chapter 7 of the Bankruptcy Code, which would entail additional

administrative costs as a result of having to pay a chapter 7 trustee's fees, the fees and expenses

of professionals retained by the chapter 7 trustee, and the costs incurred by the chapter 7 in

administering the chapter 7 case. Even if a chapter 7 trustee were able to liquidate the Lycos

shares the amount of funds for distribution to creditors (if any, after payment of administrative

11

expenses) would be considerably less than would be the case if the Debtor remained in chapter

11.  See Section - V(B) hereof ("Best Interests of Creditors").

### CONSEQUENTLY, THE DEBTOR RECOMMENDS THAT YOU VOTE TO ACCEPT THE PLAN.

The following is a condition precedent to the occurrence of the Effective Date:

The Confirmation Order shall have been entered and have become a Final Order.

### II.    THE DEBTOR AND EVENTS LEADING TO THE FILING OF THE CHAPTER 11 PETITION

On March 14, 2016, the Debtor commenced in the Bankruptcy Court a voluntary

case under chapter 11 of the Bankruptcy Code.  As discussed above, the Debtor sought chapter

11 protection to afford it the breathing room necessary to complete settlement discussions with

Daum and to permit Ybrant Digital to secure financing, the proceeds of which will be available

under the Plan to pay all creditors, including Daum.

### III.    SIGNIFICANT EVENTS DURING THE CASE

A.    Retention of Bankruptcy Counsel

On April 5, 2016, the Debtor filed an application to retain Rosen & Associates,

P.C. as its bankruptcy counsel.

On May 3, 2016, the Bankruptcy Court entered an order authorizing the Debtor to

retain Rosen & Associates, P.C. as its bankruptcy counsel *nunc pro tunc* to the Filing Date.

B.    Exclusivity

On July 12, 2016, the Debtor filed a motion to extend for sixty (60) days the

exclusive periods within which it may file a plan of reorganization and solicit acceptances.

In the motion, the Debtor represented that Daum had agreed to the terms of a settlement under

which the Debtor would pay Daum $16,000,000 pursuant to a plan of reorganization, and that it

required additional time to secure an $11,000,000 international bank guaranty of payment of the

deferred portion of the settlement amount that Daum had imposed as a condition of the

settlement.

Daum objected to the exclusivity motion, asserting that there had been no

progress in settlement negotiations since the Petition Date and that the Debtor's representation

that the parties had agreed upon the terms of a settlement was not true.

In response to Daum's objection, Suresh K. Reddy, the Debtor's Chief Executive

Officer, submitted a declaration in which he stated that that, based on his post-Petition Date

communications with Daum, he believed in good faith that an agreement in principal had been

reached and that he was actively negotiating an international standby letter of credit with respect

to the $11 million payment.

On August 4, 2016, this Court convened a hearing on the exclusivity motion,

denied it, and scheduled a status conference for September 27, 2016.

C.    Motion to Extend Time Fixed By the Bankruptcy Court to File Plan

At the September 27, 2016 status conference, the Debtor informed the Bankruptcy

Court that Ybrant Digital had negotiated a senior secured debt financing with White Oak Global

Advisors, LLC ("White Oak"), which is located in San Francisco, CA and that it intends to

allocate a portion of such financing to underwrite the Debtor's plan of reorganization.  The

Debtor also informed the Bankruptcy Court that Ybrant Digital soon would be signing a letter of

intent with White Oak at which time it would be in a position to complete settlement negotiations

with Daum, and that such settlement would position the Debtor shortly to file a plan of

reorganization with Daum's consent.  The Bankruptcy Court directed the Debtor to file a plan

and a related disclosure statement by October 21, 2016 or face dismissal or conversion of its

13

chapter 11 case. The Bankruptcy Court also scheduled a hearing on the disclosure statement for November 22, 2016 at 10:00 a.m.

Thereafter, on October 7, 2016, Ybrant Digital executed a letter agreement with White Oak, which White Oak characterizes as "[setting] forth a general overview of the preliminary terms and conditions concerning a potential secured financing for Lycos Internet" in the amount of $150,000,000. Because securing the financing was considerably time consuming due, in large measure, to the size and complexity of the proposed loan transaction, the Debtor and Ybrant Digital had not completed settlement negotiations with Daum as of the October 21, 2016 deadline and was not in a position to file a plan of reorganization and related disclosure statement.

Accordingly, the Debtor filed a motion with the Bankruptcy Court to extend for fourteen (14) days, to November 4, 2016, the time by which such plan of reorganization and related disclosure statement must be filed. The Bankruptcy Court scheduled a hearing to consider the extension motion for November 17, 2016.

Thereafter, on or about November 9, 2016, counsel for Daum contacted the Debtor's counsel and expressed its belief that the White Oak financing might not be authentic and that any agreement with Daum would be contingent on the Debtor demonstrating that the financing is genuine.

On November 10, 2016, Daum filed an objection to the Debtor's extension motion asserting, among other things, that the Debtor has failed since the filing of its chapter 11 case in March 2016 to make any showing that the Debtor's business has any prospect of rehabilitation and it has no agreement with Daum to settle its judgments. Daum also asserted that the Plan is "spurious" because it is based on an illusory $150 million financing from White

Oak that has not been authenticated.  In response to Daum's objection, Mr. Reddy traveled from

Hyderabad, India to New York on November 14, 2016 for the purpose of meeting the following

day with Daum's and the Debtor's counsel to negotiate plan treatment.  At the meeting, Daum's

counsel stated that it insisted on being included in the due diligence process with White Oak.

The Debtor now has agreed to implement a protocol to include Daum in the financing process

and keep it informed at all times as to the progress the White Oak financing.

On November 17, the Bankruptcy Court overruled Daum's objection and entered

an order granting the extension motion.

## IV.    PLAN DESCRIPTION

A.    Introduction

THE FOLLOWING IS A SUMMARY OF THE MATTERS CONTEMPLATED TO

OCCUR EITHER PURSUANT TO OR IN CONNECTION WITH THE PLAN.    THIS

DISCLOSURE STATEMENT ONLY HIGHLIGHTS THE SUBSTANTIVE PROVISIONS OF

THE PLAN AND IS NOT, NOR IS IT INTENDED TO BE, A COMPLETE READING OF THE

PLAN.    STATEMENTS REGARDING PROJECTED AMOUNTS OF CLAIMS OR

DISTRIBUTIONS ARE ESTIMATES BY THE DEBTOR BASED ON CURRENT

INFORMATION AND ARE NOT A REPRESENTATION THAT THESE AMOUNTS

ULTIMATELY WILL BE CORRECT.  THIS DISCLOSURE STATEMENT IS QUALIFIED IN

ITS ENTIRETY BY REFERENCE TO THE PLAN ANNEXED AS EXHIBIT "A" HERETO.

B.    Treatment of Administrative Expense Claims
       and Priority Claims (Unclassified)

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims, and statutory fees due to the United States Trustee have not been classified in the Plan and are to be treated as discussed below.

The Debtor will pay from Available Cash only Holders of Allowed Claims against it.  The Disbursing Agent shall make all payments and other distributions to be made under the Plan.

1.    Professional Fees

Rosen & Associates, P.C. estimates that, as of the Effective Date, its time and expense charges in the Chapter 11 Case will aggregate approximately $60,000.00 after giving effect to its $37,058.00 pre-Filing Date retainer.

Each Holder of an Allowed Administrative Expense Claim for fees and reimbursement of expenses incurred by Professional Persons shall be paid by the Disbursing Agent on the Effective Date the amount of such Allowed Claim in full, without interest, from Available Cash unless the Holder of such Allowed Claim and the Debtor agree to a less favorable treatment of such Allowed Claim, in which case such Holder will be paid in accordance with such agreement.

2.    Priority Tax Claims

Priority Tax Claims are those Allowed Claims entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.  Each Holder of an Allowed Priority Tax Claim shall be paid by the Disbursing Agent on the Effective Date the amount of such Allowed Claim in full from Available Cash unless the Holder of such Allowed Claim and the Debtor agree to a less favorable treatment of such Allowed Claim, in which case such Holder will be paid in accordance with such agreement.

3.    United States Trustee Fees

16

The Plan provides that the Debtor shall pay all United States Trustee fees under 28 U.S.C. § 1930(a)(6), plus interest due and payable under 31 U.S.C. § 3717, on all disbursements, including, but not limited to, Distributions and disbursements in and out of the ordinary course of the Debtor's business, until (a) the entry of a final decree closing the Chapter 11 Case, (b) dismissal of the Chapter 11 Case, or (c) conversion of the Chapter 11 Case to one under chapter 7 of the Bankruptcy Code. All fees and interest payable by the Debtor under 28 U.S.C. § 1930 and 31 U.S.C. § 3717, respectively, that have not been paid prior to the Effective Date shall be paid by the Reorganized Debtor in Cash on the Effective Date.  Any future United States Trustee fees and interest shall be paid with Available Cash prior to the entry of the final decree closing the Chapter 11 Case.  The Debtor anticipates that as of the Effective Date, the amount of such fees due will be approximately $1,000.00.

B.      Classification and Treatment of Claims

Classified Claims against the Debtor are described below.  A Claim will be deemed classified in a particular Class only to the extent that such Claim qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class.  Secured Claims are any Claims secured by a Lien, to the extent of the value of the creditor's interest in the Debtor's estate's interest in the property subject to such creditor's Lien, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code.

DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS UNDER THE PLAN ARE IN FULL SETTLEMENT OF ALL RIGHTS OF THE HOLDERS OF SUCH ALLOWED

CLAIMS AND SUCH HOLDERS WILL NOT BE ENTITLED TO PURSUE ANY SUCH
RIGHTS AS AGAINST THE DEBTOR.

The Plan provides for the division of Claims into the following Classes:

1.      Class 1 – Daum Unsecured Claim (Unimpaired).

Class 1 consists of Unsecured Claim of Daum.  The Plan provides that the Debtor
shall pay the Holder of the Allowed Daum Unsecured Claim (i) in full from Available Cash on
the later of (a) the Effective Date or (b) ten (10) business days after such Unsecured Claim
becomes an Allowed Unsecured Claim or (ii) upon such terms as may exist under an agreement
between the Holder of the Allowed Daum Unsecured Claim and the Debtor or the Reorganized
Debtor.the Holder of the Allowed Unsecured Claim of Daum shall be paid from Available Cash
in accordance with the terms and conditions of an agreement to be reached by and between the
Debtor and the Holder of such Allowed Claim, which agreement shall be filed prior to the date of
the hearing that shall be scheduled by the Bankruptcy Court, to consider confirmation of the Plan
The Debtor anticipates reaching an agreement with Daum, once Daum is satisfied that the White
Oak financing is genuine, pursuant to which the Debtor will pay Daum $16 million on the
Effective Date in full and final satisfaction of its Claim.

Class 1 is unimpaired by the Plan, deemed to have accepted it, and not entitled to
vote to accept or reject it.

2.      Class 2 – Non-Insider Unsecured Claims (Impaired).

Class 2 consists of the Unsecured Claims of Non-Insiders.  The Plan provides that
the Debtor shall pay the Holders of Allowed Unsecured Claims of Non-Insiders (a) in full from
Available Cash in twelve (12) consecutive, monthly installments without interest commencing
on (i) the Effective Date or (ii) ten (10) business days after such Unsecured Claim becomes an

18

Allowed Unsecured Claim or (b) upon such terms as may exist under an agreement between such Holder and the Debtor or Reorganized Debtor.

Class 2 is impaired by the Plan and entitled to vote to accept or reject it.

3.      Class 3 – Insider Unsecured Claims (Impaired).

Class 3 consists of the Unsecured Claims of Insiders.  The Plan provides that the Debtor shall pay the Holders of Allowed Unsecured Claims of Insiders (a) in full from Available Cash in twenty-four (24) consecutive, monthly installments without interest commencing on (i) the Effective Date or (ii) ten (10) business days after such Unsecured Claim becomes an Allowed Unsecured Claim or (b) upon such terms as may exist under an agreement between such Holder and the Debtor or Reorganized Debtor.

Class 3 is impaired by the Plan.  However, Class 3 is not entitled to vote to accept or reject it.

4.      Class 4 – Interests in the Debtor (Unimpaired)

Class 4 consists of Interests in the Debtor.  The Plan provides that, on the Effective Date, all of the Interests in the Debtor shall continue in full force and effect; however, the Holders thereof shall not receive any payment or property for and on account of such Interests.

Class 4 is unimpaired by the Plan and not entitled to vote to accept or reject it.

C.      Funding of Plan Distributions

As discussed above, Mr. Reddy, on behalf of Ybrant Digital, has negotiated a senior secured debt financing of up to the principal amount of $150,000,000 with White Oak and intends to allocate a portion of such financing to fund the Debtor's plan of reorganization.

On October 7, 2016, Ybrant Digital executed a letter agreement with White Oak, which White Oak characterizes as "[setting] forth a general overview of the preliminary terms and conditions concerning a potential secured financing for Lycos Internet" in the amount of $150,000,000. The letter agreement memorializes the parties' intent to close the financing in approximately eight (8) weeks from October 3, 2016 and there are customary conditions precedent, including, without limitation, White Oak's satisfaction with due diligence and the execution of definitive documentation. The letter agreement provides for the negotiation, preparation, and execution of a "Summary of Indicative Terms and Provisions" prior to the execution of such definitive documentation. Lycos Internet has paid White Oak a "Due Diligence Deposit" of $100,000 and White Oak's due diligence is underway.

Distributions to be made pursuant to the Plan shall be made from Available Cash from proceeds of the Ybrant Digital Funding, which, with respect to Distributions to be made on the Effective Date, shall be deposited in the Escrow Account prior to the Confirmation Hearing.

E.    Summary of Other Significant Plan Provisions

1.    Revesting of Assets

Upon the occurrence of the Effective Date, pursuant to the provisions of sections 1141(b) and 1141(c) of the Bankruptcy Code, all of the Assets then owned by the Debtor shall revest in the Reorganized Debtor free and clear of all Liens and Claims therein, except to the extent provided by the terms of the Plan, any supplement to the Plan, and the Confirmation Order.

2.    Prior to the Effective Date

The Confirmation Order shall empower and authorize the Debtor to take or cause to be taken, prior to the Effective Date, all actions that are necessary to enable it to implement effectively

20

the provisions of the Plan.

   3.  <u>Distributions of Cash</u>

   Distributions of Cash required to be made by the Plan will be made by check mailed by first class mail to the address of the creditor set forth in its proof of claim, or in the event no proof of claim has been filed, at the address set forth in the Schedules.

   4.  <u>Continuation of Business</u>

   After the Effective Date, the Debtor, as the Reorganized Debtor, will continue to engage in business and implement the Plan.

   5.  <u>Objections to Claims</u>

   The Debtor shall review the proofs of claim and file objections thereto within thirty (30) days after the Effective Date, provided that the Debtor may apply to the Bankruptcy Court for an extension of time to file such objections.  All timely-filed proofs of claim as to which no objection has been timely filed under this section shall be deemed Allowed Claims.

   6.  <u>Disputed Claims</u>

   Any Distribution to the Holder of a Disputed Claim will be made if, when, and only to the extent such Disputed Claim becomes an Allowed Claim and in accordance with the terms of the Plan.

   On, or as soon as practicable after, the Effective Date, the Disbursing Agent shall reserve on account of each Holder of a Disputed Claim, and hold in trust (without interest), from Available Cash, that Cash that would otherwise be distributable to such Holder on such date in accordance with the Plan if such Disputed Claim were an Allowed Claim on such date.  The Cash, if any, so reserved for the Holder of such Disputed Claim shall be distributed to such Holder, to the extent such Disputed Claim is allowed, only after such Disputed Claim becomes

an Allowed Claim.  To the extent such Disputed Claim becomes a disallowed Claim in whole or

in part, the Disbursing Agent shall distribute such Cash to the Reorganized Debtor, and such

Cash shall constitute Available Cash.

Except as otherwise provided in a Final Order of the Bankruptcy Court, the

Disbursing Agent shall deposit or invest all Cash held for the benefit of Holders of Claims under

the Plan, from time to time, consistent with section 345 of the Bankruptcy Code.

7.    Unclaimed Distributions

The Debtor shall use reasonable efforts to locate a correct mailing address for any

Holder of an Allowed Claim who is entitled to receive a Distribution.  If a Holder of an Allowed

Claim fails to negotiate a check issued to such Holder pursuant to the provisions of the Plan

hereof within sixty (60) days of the date such check was forwarded to said Holder or if a

Distribution under the Plan to any Holder of an Allowed Claim is returned to the Disbursing

Agent due to an incorrect or incomplete address for such Holder, the Disbursing Agent, in the

case of a check which was not returned and was not negotiated, shall issue a "stop payment

order" in connection with non-negotiated check(s) and, in the case of a check which was returned

for any reason including insufficient address, the amount of Cash attributable to such check(s)

will be deemed vested in the Reorganized Debtor and such Cash shall constitute Available Cash

to be distributed by the Disbursing Agent in accordance with the Plan and the payee of such

check and Holder of the concomitant Claim will be deemed to have no further Claim in respect

of such check and will not participate in any further Distributions under the Plan.

8.    Severability

Should any Plan provision be determined unenforceable, such determination shall in

no way affect the enforceability and operative effect of any other Plan provision.

9.       Post-Effective Date Fees and Expenses of Professionals

Retained professionals who perform post-Confirmation Date services for the

Reorganized Debtor shall provide monthly invoices to the Reorganized Debtor describing the

services rendered, and the fees and expenses incurred in connection therewith, on or before the

twentieth (20th) day following the end of the calendar month during which such services were

performed.  Retained professionals who timely tender such invoices shall be paid by the

Disbursing Agent for such services from Available Cash no fewer than ten (10) days after the

receipt of said monthly invoices, unless, within said ten (10) day period, a written objection to

said payment is made by the Reorganized Debtor in which event such payment shall be made

only upon an order of the Bankruptcy Court.

10.      Directors and Officers

The respective officers of the Debtor identified in the Disclosure Statement or

disclosed at the Confirmation Hearing will retain their positions immediately after the Effective

Date.

11.      Retention and Enforcement of Claims

Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Reorganized Debtor

shall retain any and all claims of the Debtor or its estate including, without limitation, Causes of

Action.

12.      Assumption, Rejection, or Assignment of Executory
         Contracts and Unexpired Leases.

On the Effective Date, unless previously assumed by the Debtor, the Debtor will be

deemed to have rejected all of its Executory Contracts.

13.      Claims Relating to Rejected Executory Contracts
         and Unexpired Leases

23

Any Claim for damages arising by reason of the rejection of any Executory Contract may constitute an Allowed Claim, if, but only if, a proof of claim therefor is timely filed, and the Debtor does not file a timely objection thereto.  The Confirmation Order will fix the last day for filing proofs of claim arising by reason of the rejection of any Executory Contract and the last day that the Debtor may object thereto.  Any Claim arising from the rejection of an Executory Contract will constitute a Claim in Class 2.

14.    Conditions Precedent to the Consummation of the Plan and
the Occurrence of the Effective Date

It shall be a condition precedent to the occurrence of the Effective Date that the Confirmation Order shall have been entered and shall have become a Final Order.

15.    Retention of Jurisdiction

Following the Confirmation Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over the Chapter 11 Case and the Plan (whether or not an order closing the Chapter 11 Case has been entered), including with respect, but not limited, to jurisdiction over the following matters:

(a)    to adjudicate all controversies concerning the classification or allowance of any Claims, whether existing at the Confirmation Date or occurring thereafter;

(b)    to hear and determine any and all objections to the allowance of Claims, whether existing at the Confirmation Date or occurring thereafter;

(c)    to hear and determine any applications for allowance of compensation and reimbursement of expenses authorized to be paid or reimbursed under the

24

Bankruptcy Code or the Plan, whether existing at the Confirmation Date or occurring thereafter;

(d)     to hear and determine any and all pending applications for rejection or assumption of any Executory Contract and the allowance of any Claim resulting from the rejection of any Executory Contract pursuant to the Plan;

(e)     to hear and determine any and all applications, adversary proceedings and contested or litigated matters that may be pending on the Confirmation Date or filed thereafter;

(f)     to hear and determine any modifications of this Plan, remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code;

(g)     to hear and determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or any provision thereof from and after the Confirmation Date;

(h)     to consider and act on the compromise and settlement of any Claim against or cause of action by or against the Debtor and the Debtor's estate;

(i)     to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar or related matters with respect to the Debtor or its estate arising prior to the Effective Date or relating to the period of administration of the Chapter 11 Case;

25

(j)     to issue such orders in aid of execution of the Plan or any provision

thereof to the extent authorized by section 1142 of the Bankruptcy Code;

(k)     to enter and implement such orders as may be appropriate in the event that

the Confirmation Order is for any reason stayed;

(l)     to enforce all orders, judgments, injunctions, and rulings entered in

connection with the Chapter 11 Case;

(m)     to hear and determine such other matters as may be set forth in the

Confirmation Order or which may arise in connection with the Plan or the

Confirmation Order; and

(n)     to enter a final decree closing the Chapter 11 Case.

## V.     CONFIRMATION OF THE PLAN

Before confirming the Plan, the Bankruptcy Court must determine that the Debtor

has complied with the requirements of section 1129 of the Bankruptcy Code regarding the Plan,

including, but not limited to, the following: (a) the Plan and its contents comply with the technical

requirements of chapter 11 of the Bankruptcy Code; (b) Holders of Claims are grouped into classes

in a permissible fashion; (c) confirmation of the Plan is in the "best interest" of creditors; (d) the

Plan is feasible; and (d) the Plan has been proposed in good faith.

**THE DEBTOR BELIEVES THAT ALL SUCH REQUIREMENTS HAVE
BEEN SATISFIED AND IT WILL SEEK RULINGS TO THAT EFFECT FROM THE
BANKRUPTCY COURT AT THE CONFIRMATION HEARING.    THE DEBTOR
RESERVES THE RIGHT TO MODIFY THE PLAN PRIOR TO AND AFTER ITS
CONFIRMATION.**

A.     Classification of Claims

The Bankruptcy Code requires that a plan place each creditor's claim and each interest holder's interest in a class with "substantially similar" claims or interests.

The Plan establishes three (3) classes of Claims and one (1) class of Interests. Under the Plan, Class 1 consists of the Secured Claim of Daum, Class 2 consists of the Unsecured Claims of Non-Insiders.  Class 3 consists of the Insider Unsecured Claims.  Interests are in Class 4.

Daum contends that the Claim of Wrobel Markham Schatz & Kaye LLP ("**Wrobel**") is improperly classified as a Class 2 Claim because Wrobel is an "insider" of the Debtor.  The Debtor, however, disagrees with Daum's contention and~~The Debtor~~ believes that the Plan's classification of Claims into the foregoing Classes complies with the requirements of the Bankruptcy Code and applicable case law. [3]

B.    "Best Interests" of Creditors

Notwithstanding acceptance of the Plan, the Bankruptcy Court must determine, independent of whether or not anyone objects to confirmation of the Plan that the Plan is in the best interests of Holders of Claims.  Generally, bankruptcy courts equate the term "best interests" with the Bankruptcy Code's requirement under section 1129(a)(7) of the Bankruptcy Code that

---

[3] ~~In its November 19, 2016 objection to the Disclosure Statement, Daum has objected to the separate classification of the Claim of Wrobel Markham Schatz & Kaye LLP ("Wrobel"), the law firm that represented the Debtor and Ybrant Digital in the District Court Action and the State Court Action.  Daum alleges that Wrobel is a non-statutory "insider," whose vote should not be counted, because it has an "intense and comprehensive role" as counsel for the Debtor.  Daum cites *Hirsch v. Va. Tarricone (In re Tarricone)*, 286 B.R 256 (Bankr. S.D.N.Y. 2002), *Three Flint Hill Ltd. Partnership v. Prudential Insurance Co. (In re Three Flint Hill Ltd. Partnership)*, 213 B.R. 292, 297-98 (D. Md. 1997), and *Koch v. Rogers (In re Broumas)*, 203 B.R. 385, 391 (D. Md. 1996), as support for its assertion. However, these cases are factually inapposite as each involved individuals who engaged in financial transactions that were found not to be arm's length.  Here, Wrobel, at all times, only represented the Debtor in the District Court Action and the State Court Action and, upon information and belief, did not engage in any financial transactions with the Debtor.  In any event, the Debtor will address this issue in connection with the Bankruptcy Court's confirmation of the Plan.~~

under any plan of reorganization, each member of an impaired class of creditors must either (a) receive or retain on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount such creditor would receive or (b) receive or retain on account of such claim or interest property of a value, as of the effective date of the plan, an amount that is not less than the amount such creditor would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

**THE DEBTOR BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF CREDITORS.**

To determine whether the Plan meets the "best interests" test, the value of the Debtor's Assets must be reduced by the anticipated costs of completing a liquidation under chapter 7 of the Bankruptcy Code, including costs incurred by a chapter 7 trustee in liquidating Claims that would otherwise have been settled under the Plan, a chapter 7 trustee's fees, the fees and expenses of professionals retained by a chapter 7 trustee, and costs incurred by the estate in administering the chapter 7 case.  In valuing the potential distributions in the context of a chapter 7 liquidation, the delay caused by conversion to, and administration of, a chapter 7 case also must be considered.  Once the net present value of a chapter 7 distribution to an impaired Class is calculated, it then must be compared to the aggregate distribution provided for that Class under the Plan.

In the event of the conversion of the Chapter 11 Case to one under chapter 7 of the Bankruptcy Code, there will be additional administrative costs as a result of having to pay a chapter 7 trustee's fees and expenses of professionals retained by a chapter 7 trustee, and the costs incurred by the trustee in administering the chapter 7 case.  In addition, the Unsecured Claim of Daum will be subordinated to the Claims of all other creditors under section 510(b) of

28

the Bankruptcy Code.[4]  The Debtor believes that liquidation of the Lycos shares will yield

approximately $20,000,000, which is sufficient to pay the fees and expenses of the chapter 7

trustee, Allowed Administrative Expense Claims, the Allowed Unsecured Claims of Non-

Insiders, and the Allowed Insider Unsecured Claims.  However, there will not be sufficient funds

to pay the Unsecured Claim of Daum, which would be subordinated to the Claims of all other

creditors in accordance with section 510(b) of the Bankruptcy Code.  A liquidation analysis is

attached hereto as Exhibit "B."

The Debtor, therefore, believes that there would be no corresponding benefit to its

estate or creditors realized from conversion.  Under the Plan, each member of an impaired class

of creditors, in accordance with section 1129(a)(7)(A)(i) of the Bankruptcy Code, "will receive

or retain on account of such claim or interest property of a value, as of the [E]ffective [D]ate of

the [P]lan, that is not less than the amount such [creditor] would receive or retain if the [D]ebtor

were liquidated under chapter 7 of [the Bankruptcy Code]."

The Plan satisfies the "best interest" test.

C.      Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires a judicial determination that

confirmation of a plan of reorganization will not likely be followed by liquidation or the need for

further financial reorganization of a debtor or any successor to the debtor under the plan, unless

---

[4] In its November 19, 2016 objection to the Disclosure Statement, Daum asserts that its Claim will not be subject to subordination under section 510(b) of the Bankruptcy Code because the claim is for a fixed monetary amount arising from a contract concluded between unaffiliated parties.  Although Daum, in fact, has a judgment, it is "for damages arising from the sale of the Lycos shares to the Debtor and, as such, is subject to mandatory or statutory subordination under section 510(b) of the Bankruptcy Code.  See *ANZ Securities, Inc., et al. v. Giddens* (*In re Lehman Bros. Inc.*), No. 14-3686, 2015 WL 8593604, at *3 (2d Cir. Dec. 14, 2015)

such liquidation or reorganization is proposed in the plan and the plan contemplates the liquidation of the debtor's assets.

As discussed above, the Plan contemplates the use of the Ybrant Digital Funding to pay the Claims of the Debtor's creditors. Because the Debtor will have sufficient assets after all Claims are paid, confirmation of the Plan is not likely to be followed by either a subsequent liquidation of a Debtor's Assets or a need for further reorganization.

Accordingly, the Plan satisfies the feasibility requirements of section 1129(a)(11) of the Bankruptcy Code.[5]

D.    Cram Down

The Bankruptcy Code contains provisions for confirmation of a plan even if that plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted the plan. These "cram-down" provisions for confirmation of a plan, despite the non-acceptance of one or more impaired classes of claims or interests, are set forth in section 1129(b) of the Bankruptcy Code.

Under the "cram down" provisions, upon the request of a debtor, the Bankruptcy Court will confirm a plan despite the lack of acceptance by an impaired class or classes if it finds that (i) the plan does not discriminate unfairly with respect to each non-accepting impaired class; (ii) the plan is fair and equitable with respect to each non-accepting impaired class; and (iii) at least one (1) impaired class has accepted the plan. As used by the Bankruptcy Code, the phrases "discriminate unfairly" and "fair and equitable" have narrow and specific meanings unique to

---

[5] Although Daum questions the ability of Ybrant Digital to obtain the White Oak financing, this Disclosure Statement represents the best and most current information available concerning the efforts of Ybrant Digital to secure such financing. As mentioned above, any agreement with Daum is contingent upon satisfying Daum that the White Oak financing is genuine and, in any event, the Debtor will address this issue in connection with Bankruptcy Court's confirmation of the Plan.

bankruptcy law. A plan does not discriminate unfairly if claims or interests in different classes

but with similar priorities and  characteristics, receive or retain property of similar value under a

plan.  By establishing separate Classes for the holders of each type of Claim and by treating each

holder of a Claim in each class identically, the Plan has been structured so as to meet the "unfair

discrimination" test of section 1129(b) of the Bankruptcy Code.

The Bankruptcy Code sets forth different standards for establishing that a plan is

"fair and equitable" with respect to a dissenting class, depending on whether the class is

comprised of secured or unsecured claims or interests. In general, section 1129(b) of the

Bankruptcy Code permits confirmation notwithstanding non-acceptance by an impaired class if

that class and all junior classes are treated in accordance with the "absolute priority" rule, which

requires that the dissenting class be paid in full before a junior class may receive anything under

the plan.  In addition, case law surrounding section 1129(b) requires that no class senior to a non-

accepting impaired class receive more than payment in full on its claims.

Under the Plan, only Class 2's vote will be counted.  The Debtor believes that if

Class 2 does not accept the Plan, the Plan cannot be confirmed and the Chapter 11 Case will be

converted to one under chapter 7 of the Bankruptcy Code.  The Debtor believes, however, that

Class 2 will accept the Plan because it provides it with the maximum and most cost-efficient

Distribution of the Debtor's Assets.

E.      Effect of Confirmation

1.      Injunction.

The Plan provides that, on the Effective Date, all Persons who have held, hold, or

may hold Claims arising on or before the Effective Date or who have held, hold, or may hold

Interests acquired on or before the Effective Date will be enjoined from taking any of the

following actions with respect to such Claims or Interests, provided, however, that the injunction

shall not affect the liability of any other entity on, or the property of any other entity for, such

Claims or Interests: (a) commencing, conducting, or continuing in any manner, directly or

indirectly, any suit, action or other proceeding of any kind against the Debtor, any of the Assets

or any direct or indirect transferee of any Assets of, or successor in interest to, the Debtor or any

assets of any such transferee or successor, (b) enforcing, levying, attaching, collecting, or

otherwise recovering by any manner or means, whether directly or indirectly, any judgment,

award, decree, or order against the Debtor, any of the Assets, or any direct or indirect transferee

of any Assets of, or successor in interest to, the Debtor or any assets of any such transferee or

successor, (c) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly,

any Lien or encumbrance of any kind against the Debtor, any of the Assets or any direct or

indirect transferee of any Assets of, or successor in interest to, the Debtor or any assets of any

such transferee or successor, (d) asserting any set-off, right of subrogation or recoupment of any

kind, directly or indirectly, against any obligation due the Debtor, any of the Assets or any direct

or indirect transferee of any Assets of, or successor in interest to, the Debtor or any assets of any

such transferee or successor, and (e) proceeding in any manner in any place whatsoever that does

not conform to or comply with the provisions of the Plan.

        2.    <u>Discharge</u>.

        The Plan provides that, except as expressly provided in the Plan, (a) each holder of a

Claim against or Interest in the Debtor shall be deemed to have forever waived, released, and

discharged the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of

and from any and all Claims, rights, and liabilities that arose prior to the Effective Date and (b) all

such holders shall be permanently precluded and enjoined, pursuant to section 524 of the

Bankruptcy Code, from prosecuting or asserting any discharged Claim against the Debtor.

3.    Exculpation

The Plan provides that neither the Debtor nor any of its respective members, officers, directors, trustees, managing agent, owners, or employees (acting in such capacity) nor any Professional Person employed by the Debtor, shall have or incur any liability to any person and/or entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, confirmation, or consummation of the Plan, the Disclosure Statement, or any other contract, instrument, release, or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Chapter 11 Case or the Plan; provided, however, that the foregoing exculpation from liability will not apply to actions or omissions taken in bad faith or as a result of gross negligence or willful misconduct.  Nothing in the Plan shall limit the liability of the lawyers to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1) (2009).

**VI.    CERTAIN RISK FACTORS AFFECTING THE DEBTOR**

**ALL HOLDERS OF CLAIMS SHOULD READ AND CAREFULLY CONSIDER THE FACTORS SET FORTH BELOW, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT.**

A.    General

The following provides a summary of various important considerations and risk factors associated with the Plan.  However, it is not exhaustive.

B.    Certain Bankruptcy Considerations

1.    Parties in Interest May Object to the Debtor's Classification of Claims

Section 1122 of the Bankruptcy Code provides that a plan of reorganization may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class.

The Debtor believes that the classification of Claims under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtor has created three (3) classes of Claims, each class encompassing Claims that substantially are similar to the other Claims in each such class.

2.    Risk that the Plan May Not Be Confirmed

There is no assurance that the Bankruptcy Court will confirm the Plan.  A creditor or a party in interest might challenge the adequacy of the Disclosure Statement, or any amendment thereto.  Even if the Bankruptcy Court determined that the Disclosure Statement or any amendment thereto were appropriate, the Bankruptcy Court could decline to confirm the Plan if it finds that any of the statutory requirements for confirmation had not been met.  Section 1129 of the Bankruptcy Code sets forth the statutory requirements for confirmation of the Plan and requires that the Bankruptcy Court find, among other things, that (a) the Plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting Classes, (b) the Plan is "feasible," *i.e.,* is not likely to be followed by a liquidation or a need for further financial reorganization, and (c) the value of distributions to non-accepting Holders of Claims within a particular class under the Plan will not be less than the value of distributions such Holders would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code.

3.    Alternatives to the Plan

The Debtor believes that the Plan provides Holders of Allowed Claims with the greatest possible value and earliest possible returns that can be realized on their respective

34

Claims.  The alternatives to confirmation of the Plan are: (a) confirmation of an alternative plan

of reorganization submitted by the Debtor or by another party in interest or (b) dismissal of the

Chapter 11 Case.  As discussed herein, the Debtor believes that the Plan provides a greater and

earlier recovery to Holders of Allowed Claims than any of the stated alternatives.

4.    Dismissal

Dismissal of the Chapter 11 Case would have the effect of restoring (or

attempting to restore) all parties to the *status quo* before the Filing Date.  Upon dismissal, the

Debtor would no longer be protected by the automatic stay provisions of the Bankruptcy Code.

Daum would be free to enforce the collection of its claim against the Debtor.  Thus, dismissal of

the Chapter 11 Case likely would result in costly, uncontrolled, and protracted litigation together

with liquidation of the Asset(s) at less than fair market values.  Consequently, the Debtor

believes that dismissal of the Chapter 11 Case is not a practical or favorable alternative.

5.    Tax Consequences of Confirmation

Confirmation may have federal income tax consequences for the Holders of

Claims and Interests.  The Debtor has not obtained, and does not intend to request a ruling from

the Internal Revenue Service, nor has the Debtor obtained an opinion of counsel with respect to

any tax matters.  Any federal income tax matters raised by confirmation of the Plan are governed

by the Internal Revenue Code and the regulations promulgated thereunder.  The creditors and

Holders of the Interests are urged to consult their own counsel and tax advisors as to the

consequences to them, under federal and applicable state, local, and foreign tax laws, of

distributions under the Plan.  The federal, state and local tax consequences of distributions under

the Plan may be complex in some circumstances and, in some cases, uncertain.  Accordingly,

each holder of a Claim or Interest in estate property is strongly urged to consult with his or her

own tax advisor regarding the federal, state, and local tax consequences of distributions under the

Plan, including, but not limited to, the receipt of cash under the Plan.

## VII.    <u>RECOMMENDATION</u>

**THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE GREATEST AND EARLIEST POSSIBLE RECOVERY TO HOLDERS OF ALLOWED CLAIMS AND IS IN THE BEST INTERESTS OF CREDITORS.  THEREFORE, THE DEBTOR RECOMMENDS THAT EACH HOLDER OF AN ALLOWED CLAIM VOTE TO ACCEPT THE PLAN.**

Dated:  New York, New York
        ~~November 21~~<u>December 6</u>, 2016

                                ROSEN & ASSOCIATES, P.C.
                                Attorneys for the Debtor and
                                 Debtor in Possession

                                By: <u>/s/ Nancy L. Kourland</u>
                                    Nancy L. Kourland

                                747 Third Avenue
                                New York, NY  10017-2803
                                (212) 223-1100

                                        -

36