Hearing date: March 7, 2017<br>Time: 2:00 p.m.

THE LAW OFFICE OF BO-YONG PARK, P.C.
Attorneys for Secured Creditor – Party In Interest
Daum Global Holdings Corp.
2429A 2nd Street
Fort Lee, NJ 07024
(800) 615-6470
Bo-Yong Park
William J.T. Brown

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------- x
In Re:                                              :    Chapter 11
                                                    :
YBRANT MEDIA ACQUISITION, INC.,                     :    Case No.16-10597 (SMB)
                                                    :
                            Debtor.                 :
---------------------------------------------------- x

**SECURED CREDITOR AND PARTY-IN-INTEREST DAUM GLOBAL HOLDINGS
CORP.'S MOTION TO DISMISS CHAPTER 11 CASE**

NOW Comes Secured Creditor and Party-in-Interest Daum Global Holdings Corp. ("Daum") by and through its undersigned counsel and pursuant to 11 U.S.C. §§105, 305, 349 (b), 1106 and 1112 (b), Federal Rules of Bankruptcy Procedure 1017 (f), 2002 (a) (4), 9013, and 9014 and S.D.N.Y. LBR 9013-1 and 9014-1 and hereby moves the Court for dismissal of the above captioned Chapter 11case of Debtor Ybrant Media Acquisition, Inc. ("Debtor") for cause pursuant to Section 1112 (b) of the Bankruptcy Code and for such other relief as the Court shall deem just and proper.

## Jurisdiction and Venue

1.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §157 (b)(2)(A), (B) , (L) and (O).  Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

2.     On March 14, 2016 (the "Petition Date"), Debtor filed an original Voluntary Petition under Chapter 11 of the Code.

3.     The Debtor is continuing to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.     No trustee, examiner, or committee of unsecured creditors has been appointed in this chapter 11 case.

## Historic Background of Creation and Business Career of Debtor

5.     The Debtor is a Delaware corporation organized in 2007 as a wholly owned subsidiary of its parent company, a corporation organized under laws of the Republic of India, Ybrant Digital Ltd. (hereinafter referred to as "Ybrant Digital" or the "Indian Parent").  Ybrant Digital more recently renamed itself Lycos Internet Ltd.  The Chairman of Ybrant Digital, Mr. Suresh Reddy, has indicated that the purpose of creating the Debtor was to have it serve Ybrant Digital as an acquisition vehicle.

6.     Ybrant Digital, Debtor's Indian Parent, is headquartered in Hyderabad, India and is publicly listed on the Indian National and Bombay Stock Exchanges.  Its market capitalization

2

is estimated at only $55.8 million. See accompanying Declaration of Bo-Yong Park, Esq. dated February 9, 2017 ("Park Decl.") ¶3 and Exhibit A thereto.

7.  Despite its relatively small size Ybrant Digital has at least nineteen wholly-owned subsidiaries in many countries of the world and has evidenced notable ambitions for expansion outside India. For example, in 2012 it agreed to buy the "Price Grabber" price comparison websites from Experian, the credit reporting company, for $175 million. When Ybrant Digital failed to come up with the cash Experian charged it with breach of contact. See Park Decl., ¶4 and Exhibit B thereto, Financial Times, September 26, 2012.

8.  Ybrant Digital also had ambitions in the internet business, notably to use its acquisition vehicle, the Debtor, to acquire Lycos, Inc. (hereafter "Lycos"), a Virginia corporation headquartered in Waltham, Massachusetts. Lycos was a historic search engine and pioneer of the internet once comparable to Google or Yahoo but which had not grown apace with those early rivals. Park Decl., ¶5.

9.  In 2010, when Ybrant Digital hatched its ambitions to acquire Lycos, Lycos was wholly owned by Daum. In mid-2010 Daum and Ybrant Digital, the latter joined by its acquisition subsidiary, the Debtor, negotiated a transaction for sale of the shares of Lycos to Debtor. The principal terms of the arrangement were: (i) initial payment to Daum of $20 million at closing; and (ii) further payment to Daum after the close of calendar 2010 of an "earnout" amount calculated in accordance with an accounting formula based on Lycos earnings for calendar 2010, minus the initial $20 million. The Debtor served as purchaser; the Indian Parent Ybrant Digital guaranteed Debtor's obligation. All parties submitted to the jurisdiction of the state and federal courts of New York, and agreed to resolve all disputes through binding arbitration under rules of the International Chamber of Commerce ("ICC") in Singapore. Id.

10. At the closing Debtor received ownership of 4,905,498 shares of Lycos or 56% of Lycos shares, while an additional 44% of Lycos shares (3,854,319 shares) were placed in escrow with Wells Fargo Bank in Denver to be transferred to the Debtor upon its timely payment of the earnout amount after the close of calendar 2010, and otherwise, in the event of default, to be returned to Daum. Park Decl., ¶6.

11. Following the close of 2010 Ybrant Digital acknowledged that a further earnout payment was due and the parties made independent calculations of the earnout amount (which Daum calculated as more than $34 million). The matter of the balance due was discussed at a meeting in Seoul in 2011, but no payment was made by Debtor, nor by Ybrant Digital, which had guaranteed the performance of Debtor's obligation. At this time Daum also learned that Debtor and/or the Indian Parent had transferred some $ 6 to $7 million of Lycos' treasury funds out of the United States. Daum accordingly sued the Debtor and its Indian Parent in the Commercial Division of New York State Supreme Court to enjoin further transfer of Lycos funds outside the United States and to compel ICC arbitration in Singapore. Park Decl., ¶7.

12. That court accordingly directed the parties to arbitration in Singapore and entered its preliminary injunction forbidding the further transfer of Lycos funds outside the ordinary course of business or in diminution of the value of Lycos stock. See Park Decl., ¶7 and Exhibit C thereto, preliminary injunction issued by Hon. Jeffrey Oing, N.Y. State Supreme Court. That injunction remains in effect today more than six years later. Park Decl. ¶7.

13. Three arbitration awards were granted to Daum by the arbitrators, and against the Debtor and its Indian parent. The first for $250,000 represented an award of costs made to compensate Daum for the failure of Ybrant Digital and Debtor to pay any share of ICC arbitration costs; the second of $177,500, was a similar award for default in payment of share of

4

costs, and the final award in the amount of some $36 million, representing the earnout amount, determined by the arbitrators to be some $33,547,883 plus attorneys' fees, interest and costs. See Park Decl., ¶8 and Exhibit D thereto, pertinent excerpts from the final arbitral award including the dispositive paragraph, paragraph 213 providing for ongoing accrual of interest on the unpaid balance of the final of the three awards at the three month LIBOR rate plus 2% until payment in full. The arbitral tribunal allowed Ybrant Digital a twenty day period to fulfill its guarantee and when no payment was forthcoming the entire award became the joint and several obligation of the Debtor and its parent, co-debtor Ybrant Digital. Park Decl. ¶8.

14. After Debtor and Ybrant Digital defaulted on their obligation to pay the award, the Escrow Agent in Colorado, Wells Fargo Bank, released the escrowed certificates representing 44% or 3,854,319 Lycos shares to Daum. The certificates representing those shares remain in the name of Daum as owner as when placed in escrow in 2010. See Park Decl., ¶9 and Exhibit E thereto. Certificates representing 4,905,498 Lycos shares or 56% of the total remain in the possession of Debtor or its Indian Parent, but as shown below are subject to lien of Daum. Park Decl., ¶9.

15. Each of the three arbitration awards was duly confirmed by judgment of the United States District Court for the Southern District of New York (Hon. Alison J. Nathan). The confirming judgments were entered respectively on February 26, 2014, April 18, 2014, and May 6, 2015. The Final Award's decretal paragraph 213 providing for ongoing accrual of simple interest at the three month LIBOR rate plus 2% on the unpaid balance until payment in full was incorporated by reference into the judgment. See Park Decl., ¶10 and Exhibit F thereto, Memorandum and Order confirming final arbitration award and incorporating in the judgment the arbitration award's decretal paragraph 213. Thus, the judgment amount described above

5

accrues interest at that rate on the unpaid balance until paid in full in accordance with provisions of the New York Convention and the Federal Arbitration Act giving binding effect to international arbitration awards rendered in the territory of another contracting state. No appeal was taken from the judgments confirming the arbitration awards.

16. Thereafter Daum commenced a special proceeding before Judge Nathan pursuant to Rule 69, Fed. R. Civ. P. and CPLR § 5225 (a) to enforce the judgments through issuance of a turnover order directed to Ybrant Digital and Debtor, ordering them to pay the judgments, failing which they were to turn over to the sheriff or Marshal, in the case of the Debtor, the certificates representing ownership of 56% of Lycos, and in the case of Ybrant Digital, 100% of the shares of its worldwide subsidiaries including, without limitation:

> *Yreach Media Private Limited, India*
> *Frontier Data Management Inc., USA*
> *International Expressions Inc. USA*
> *Ybrant Digital USA, Inc.*
> *Online Media Solutions Limited, Israel*
> ***Ybrant Media Acquisition, Inc.***
> ***Dyomo Corporation, USA***
> *Max Interactive Pty Ltd Australia*
> *Dream Ad Argentina*
> *Dream Ad Chile*
> *Get Media Mexico Sociedad Anonima de Capital Variable*
> *Dream Ad Panama*
> *Dream Ad Uruguay*
> *Ybrant Digital Services de Publicidade Ltda Brasil*
> *Ybrant Digital (Brasil) Ltd Singapore*
> *Tech Orbit Inc. USA*
> *Global IT Inc. USA*
> *LGS Global FZE UAE*
> *Lycos, Inc.*

17. On October 6, 2015 Judge Nathan issued her Turnover Order. See Exhibit G to Park Decl., Memorandum and Order ("Turnover Order"), pages 6-7 and Exhibit H to Park Decl.,

pages 5 and 6 of Daum's memorandum of law referred to in Judge Nathan's Turnover Order. The imperative language of Judge Nathan's Turnover Order states:

> Respondents [Ybrant Digital and Ybrant Media Acquisition] are ordered to either (1) pay Petitioner [Daum] enough money to satisfy the Judgment plus applicable interest, minus the current value of the Escrowed Shares; or (2) deliver to a designated sheriff or Marshal for sale stock certificates in their possession or control of sufficient value to satisfy the judgment plus applicable interest, minus the current value of the Escrowed Shares.
>
> Stock certificates subject to this Order **include but are not limited to** stock in the companies outlined in pages 5 to 6 of Petitioner's Brief in which Ybrant Digital has a 100% ownership interest, **as well as Ybrant Media's stock in Lycos**.

Exhibit G (Turnover Order) to Park Decl., pages 6 – 7 (emphasis added).

18. The name of Debtor is printed in bold in the list in paragraph 16 above to call attention to the presence of the Debtor as one of the entities whose shares were to be turned over to Daum. Also noted with emphasis on the list is Dyomo Corporation which is the same entity that has asserted a claim for $267,678 in the instant chapter 11 proceeding.

19. Both the Debtor and Ybrant Digital appeared by counsel in opposition to the turnover proceeding[1] and thus submitted to jurisdiction. They did not dispute the point that they had possession and custody of the share certificates whose delivery was sought. Park Decl. ¶14.

20. Despite their submission to Judge Nathan's jurisdiction in the turnover proceeding pursuant to CPLR 5225(a) the Debtor and its Indian Parent did not comply with Judge Nathan's Turnover Order. Nor did they take any appeal from that order. Thus on January 25, 2016 Daum moved in the Southern District Court to appoint Daum as receiver, pursuant to NY CPLR §

---

[1] Represented by David Wrobel, Esq, (an unsecured creditor in the present Chapter 11 proceeding).

7

5228, of Ybrant Media's 56% ownership interest in Lycos. Ybrant Media's response to this motion was due on March 14, 2016. Park Decl. ¶15. On March 14, 2016, however, Ybrant Media commenced this voluntary case under chapter 11 of the Bankruptcy Code. As a result of the bankruptcy filing, all proceedings against Ybrant Media, including the case before Judge Nathan in the Southern District Court, were automatically stayed.

21. On December 6, 2016, Ybrant Media, as Debtor filed the Debtor's Amended Plan of Reorganization (the "**Plan**") and Second Amended Disclosure Statement With Respect to the Debtor's Amended Plan of Reorganization (the "**Disclosure Statement**"). The Confirmation Hearing for the Amended Plan was scheduled for January 26, 2017.

22. On January 25, 2017, one day before the scheduled Confirmation Hearing, Ybrant Media requested that the Court adjourn the Confirmation Hearing for a period of sixty (60) days on the ground that Ybrant Media needed more time to obtain necessary financing to implement the Plan.

23. At the hearing on January 26, 2017, the Court authorized Daum to file a motion to dismiss the chapter 11 case and set March 7, 2017 as return date for the motion.

### **Debtor's Failure to Obtain Financing to Implement the Plan**

24. In order to cause the Debtor to emerge from bankruptcy with its majority holding of Lycos shares intact, Ybrant Digital turned to a process involving a San Francisco-based entity, White Oak Global Advisors LLC. ("White Oak"), which Debtor has characterized as an application by the Indian Parent for a $150 million loan which would be secured by assets of Ybrant Digital and used in part to discharge the $37 million Daum judgments.

25. While Debtor has said that it filed its chapter 11 petition on March 14, 2016 to gain "breathing room" to achieve a negotiated settlement with Daum, some eleven months have gone by and Debtor and its Indian parent have been unable to produce the funds to enable any settlement. Their proposed plan of reorganization offers no prospect of independent survival for Debtor but would depend on artificial life support, an injection of funds into Debtor which funds would have to be borrowed by the Indian parent at a high interest rate from White Oak. Without such a borrowing the plan is a nonstarter, yet we have had no corroboration that such a borrowing is feasible. The insistence of Debtor's counsel that the funding is possible has thus far kept Daum at the table, despite the obvious flaws in Debtor's proposed plan.

26. At the scheduled Plan Confirmation Hearing on January 26, the Debtor reported to the Court that the White Oak financing had not happened. The Court originally gave Debtor fair warning that the full amount of the necessary funding would have to be in escrow under Rule 3020 by January 10, 2017 and indicated that if the fund is not escrowed by that time the case would be dismissed. That date was pushed back to January 26 but the Debtor still failed to comply with the Court's order.

## Daum is a Secured Creditor

27. As a result of the Turnover Order, Daum has a security interest or lien upon the shares that were ordered to be turned over, a lien upon 100% of the shares of the Debtor itself (which Ybrant Digital asserts in these proceedings that it owns) and a similar lien on the 56% of Lycos shares as to which the Debtor asserts ownership rights.

28. In this regard CPLR 5202 (b) provides in pertinent part:

9

> Where a judgment creditor has secured an order for delivery of …. an interest of the judgment debtor in personal property, the judgment creditor's rights in the . . . property are superior to the rights of any transferee of the . . . property, except a transferee who acquired the . . . property for fair consideration and without knowledge of such order.

29.     As Siegel confirms, "[a]n order under CPLR 5225 (a) . . . gives the judgment creditor who gets it a lien on the subject personal property *as of the moment of entry of the judgment or order*." Siegel, New York Practice, §510. (Emphasis added.) As the quoted passage from CPLR 5202 (b) provides, a lien resulting from a § 5225 order could be set aside by a purchaser for fair value without knowledge of the lien but cannot be set aside by the trustee or debtor in possession exercising the more limited powers of 11 U.S. §544 (a) (1) and (2). See In re Marceca, 129 B.R. 369 (Bankr. S.D.N.Y. 1991); In re Sid Bernstein, 1996 Bankr. LEXIS 393 (Bankr. E.D. Pa 1996); In re Vladislav Zubkis, case no. 05-14063-H7, Bankr. S.D. Cal., Feb. 7, 2006.

30.     Only the automatic stay imposed on the petition date, March 14, 2016, has prevented appointment of a receiver to cancel the Lycos share certificates that have been contumaciously withheld and to issue new ones to be turned over to Daum.

## This Chapter 11 Case Should Be Dismissed

### A. Debtor Filed This Case In Bad Faith

31.     When we view the Debtor's Form 206A/B (Schedule A/B: Assets Real and Personal) as filed April 15, 2016 we see that the only property that Debtor claims to own is "4,905,498 shares of Lycos, Inc.", whose value Debtor here lists as " Unknown".[2] These are of course the 56% of Lycos shares that Judge Nathan ordered the Debtor to turn over to Daum. As

---

[2] Debtor later claimed the value as some $20 million.

10

shown above, Daum has a priority lien on these shares. Perusal of the balance of the schedule indicates that Debtor has no other assets, no cash, leaseholds, unexpired contracts nor other assets of any description.

32. In the Form 206E/F as filed April 12, 2016 the Debtor does acknowledge that it owes Daum some $37 million in respect of three arbitration awards confirmed by judgment. In the Form 206H filed on the same day the Debtor acknowledges that it has one co-debtor, its parent company, Ybrant Digital, jointly and severally liable on the arbitration awards.

33. The Debtor represented that there are four other creditors apart from Daum:

    a) Dyomo Corp., said to have lent Debtor $267,678, was mentioned above as one of Ybrant Digital's wholly owned subsidiaries whose shares were ordered to be turned over to Daum. Daum has a lien on the equity ownership of Dyomo Corp.

    b) Lycos, Inc., 56% of whose shares the Debtor was ordered to turn over to Daum, is listed as having lent $1,875,201 to the Debtor. This debt appears to be in violation of Judge Oing's injunction which enjoined Ybrant Digital and the Debtor from "taking cash … from Lycos, Inc., or otherwise diminishing the value of Lycos, Inc. shares in which [Daum] holds a security or ownership interest." See Exhibit C to Park, Decl. This is prima facie evidence of contumacy and bad faith.

    c) Ybrant Digital Ltd., the Indian Parent, is listed as having lent the Debtor $517,049. As shown above Daum has judgments of some

$37 million against the Debtor's Indian Parent and a lien on the shares of all the Indian Parent's subsidiaries.

d) We pass over in silence the fourth listed creditor, the law office of Ybrant Digital's former counsel who seemingly has not yet been paid for prior labors.

34. Daum's point in examining this schedule is the utter improbability that a company so strapped with debt and devoid of assets as the Debtor could expect in good faith to be revived and reorganized in Chapter 11. Cases such as In re CTC 9th Ave Ptshp v. Norton Co., 113 F.3d 1304, 1310 (2d Cir. 1997) outline factors that are indicative of a bad faith filing. The CTC factors are present here: (i) Debtor has one asset, the 56% of Lycos shares, that are subject to Daum's lien, which far exceeds the value of the shares; (ii) It has one creditor, Daum, for some $37 million; (iii) It has no employees, no assets, no source of revenue, and no cash flow. (iv) Moreover, as in CTC, "the timing of the Debtor's resort to Chapter 11 evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights." Id. Indeed, Debtor filed for Chapter 11 on March 14, 2016 while Daum's motion to be appointed its receiver was pending before Judge Nathan. As all of the CTC factors are present in Debtor's case, Debtor's use of Chapter 11 is a classic case of bad faith filing.

**B. Debtor Does Not Have A Reasonable Likelihood of Rehabilitation**

35. In its petition, Debtor asserted that it needed "breathing room" for the Indian Parent to negotiate a settlement. Debtor's counsel also informed the Court that a settlement had been agreed upon, but that information was recanted when the Indian Parent company proved unable to obtain the necessary financing.

12

36. We are now one year post petition date. As the Court knows the vain quest for an $11 million standby letter of credit has turned out to be a failure. Instead, the Debtor has been representing to the Court a quest for a $150 million financing from a San Francisco lender called White Oak.

37. On November 22, 2016 Mr. Reddy, the CEO of both Debtor and its Indian Parent asserted in open court that only "two or three weeks" would suffice to agree upon and document the necessary financing. However, three months later, while we hear from Mr. Reddy of site visits and pursuit of due diligence, White Oak has not confirmed to the Court or to Daum any intention to supply Mr. Reddy's requested financing. There is well justified concern that the $150 million now sought will prove as elusive as the $175 million that Mr. Reddy failed to find in the Experian/Price Grabber acquisition in 2012 (see Exhibit B to Park Decl.), or the $36 million earnout payment that Ybrant Digital defaulted on making for Lycos shares in 2011, or even the $11 million standby letter of credit that Ybrant Digital was vainly seeking to obtain when it filed is petition herein. At that time Debtor said it only needed breathing room to negotiate a lowball settlement with Daum, but its assurances to the Court were incorrect. It did not have Daum's agreement and it could not even obtain an $11 million standby letter of credit from one of the distinguished banks it had approached.

38. The terms of the alleged White Oak financing reinforce the negative prospect of the Debtor's rehabilitation. By virtue of the Turnover Order Daum holds a lien on the shares of the Indian Parent's worldwide subsidiaries which lien would have to be released or subordinated in connection with any new borrowing to be secured by the Indian Parent's assets. Such a deal would require approval of Judge Nathan of the Southern District and Judge Oing of New York

13

State Supreme Court, together with the approval of this Court.  Yet neither White Oak nor Debtor has made any approach to Daum in such regard.  Park Decl. ¶22.

39.     In fact, the trustworthiness of Mr. Reddy and Mr. Brad Cohen, the Chief Strategy Officer of Ybrant who were present at the November 2016 hearing before this Court, had been seriously questioned by the ICC Arbitration Tribunal.  The Tribunal stated that:

> Where the evidence of Mr Yoon and Mr Lim [of Daum] differed from that of Mr Reddy and Mr Cohen, the Tribunal prefers the evidence of Mr Yoon and Mr Lim.  The Tribunal finds Mr Yoon and Mr Lim to have been impressive and truthful witnesses whose evidence it accepts.  In contrast, the Tribunal found the evidence of Mr Reddy and Mr Cohen highly unsatisfactory in material respects.
>
> In paragraph 2 of his witness statement, Mr Reddy described himself in terms as the General Manager, Finance, of Ybrant with personal knowledge of the facts and circumstances surrounding its acquisition of and subsequent operations of Lycos.  The Tribunal found Mr Reddy's attempts in cross- examination to distance Ybrant and himself from knowledge of Lycos' financial situation wholly implausible.  The Tribunal is unable to accept Mr Reddy's evidence in relation to the Escrowed Shares …
>
> Indeed, much of Mr Reddy's evidence on the quality of the traffic and about Mr Lim was based on supposition and inference and was not supported by any documentary evidence which, if it exists, could and should have been produced to the Tribunal.
>
> The Tribunal was similarly unimpressed with Mr Cohen's evidence, which was disingenuous and which the Tribunal rejects almost in its entirety.

Exhibit I to Park Decl.

40.     In this proceeding, Mr. Reddy misrepresented to the Court multiple times.  In his own words, Mr. Reddy certified to the Court that he "related to the Debtor's bankruptcy counsel that the Debtor and Daum had an agreement in principal regarding the treatment of Daum's

14

claim", which was not true. Declaration of Suresh K. Reddy, dated August 2, 2016 [Doc 24], ¶11. Mr. Reddy also caused the Debtor's counsel to state that an international bank guaranty of $11 million would be in place in approximately two (2) months [i.e., mid-September 2016], which did not happen. Debtor's Motion Extending the Exclusivity Periods, dated July 12, 2016 [Doc 20], ¶18. On September 12, 2016, while Daum was waiting for the promised international bank guaranty, Ybrant sent to Daum counsel a term sheet with White Oak dated July 22, 2016 for a "secured financing in the amount of $250 million." Declaration Suresh K. Reddy, dated November 16, 2016 [Doc 33], ¶8. This term sheet dated July 22 contradicted Mr. Reddy's representation to the Court on August 2 stating that "I also informed the Debtor's counsel that I was actively negotiating the international standby letter of credit on behalf of Ybrant Digital and believed that a settlement agreement with Daum would be executed by mid-September." Declaration of Suresh K. Reddy, dated August 2, 2016 [Doc 24], ¶11. Mr. Reddy attempted to justify this contradiction by stating to the Court that "At the same time that I was working to secure the international letter of credit, however, I also was in contact with Acquisto Financial Advisory LLP, a technology 'deal sourcing' company based in Boston, MA and Hyderabad, India, to identify alternative sources of capital in the event that I was unsuccessful in obtaining the letter of credit." Declaration of Suresh K. Reddy, dated November 16, 2016 [Doc 33], ¶6. Ultimately, however, Mr. Reddy represented to the Court that "[Ybrant Digital] and White Oak executed a letter agreement on or about October 7, 2016 … in the amount of $150,000,000." Id at ¶10.

41.     It is evident that this latest idea of $150,000,000 outside financing might not be the last representation to the Court by Mr. Reddy. In fact, on May 6, 2014, which was the eve of the arbitration hearing in Singapore, Mr. Reddy sent Daum another term sheet signed with Oak

15

Investment Partners XII, LP and asked for a settlement. But Daum never heard that this financing ever actually materialized. Park Decl., ¶23. Therefore, we respectfully submit that the Court should not give much weight to any non-binding term sheets or letters of intent regarding outside financing presented by the Debtor and Ybrant Digital.

42. Indeed the notion that a third party would loan $150 million to a company whose market capitalization is only $55.8 million, whose subsidiary shares are all subject to a turnover order of a Federal judge and whose main US asset is in chapter 11 proceeding defies the logic of corporate finance.

43. There are no doubt some who dream of an internet company that will arise from the Indian subcontinent, and the historic Lycos company or its battered components might have been part of that dream. But it is surely not proper to ask the secured creditor who holds a lien upon the shares of Lycos and the entire business of Debtor to pay the price of vain delay, while the Lycos business itself continues to lose value. The Debtor has had its opportunity to pursue financing and should now be set to one side so that Daum can have its turn at seeking to revive Lycos.

### No Prior Request

44. No prior request for the relief sought in this Motion has been made to this or any other Court.

### Notice

45. The movant shall notify of this Motion by serving by first-class mail a copy of the Motion, the Declaration of Bo-Yong Park and the prefixed notice of hearing upon: (a) the Office

of the United States Trustee for Region 2; (b) counsel for Debtor; (c) creditors; and (d) all those who have requested notice and service of papers in the Debtor's chapter 11 case.

## **CONCLUSION**

For the reasons set forth above, the Motion of Secured Creditor Party-In-Interest Daum for dismissal of Debtor's Chapter11 Case should be granted and the Court is requested to grant such other and further relief as may be proper.

Accordingly, the Court is requested to enter an order dismissing Debtor's Chapter11 Case substantially in the form annexed hereto as Exhibit "A."

No prior request for the relief sought in this Motion has been made to this or any other Court.

                                      Respectfully submitted,

Dated: Fort Lee, New Jersey       THE LAW OFFICE OF BO-YONG PARK, P.C.
       February 9, 2017

                                      By: /s/ Bo-Yong Park

                                      Bo-Yong Park (BP1622)
                                      William J.T. Brown (WB1306), Of Counsel
                                      2429A 2nd Street
                                      Fort Lee, NJ 07024
                                      (800) 615-6470
                                      Attorneys For Daum Global Holdings Corp.