**Hearing Date: March 7, 2017**
**Time: 2:00 p.m.**

ROSEN & ASSOCIATES, P.C.
Attorneys for the Debtor
  and Debtor in Possession
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Nancy L. Kourland

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

In re                                                        Chapter 11

YBRANT MEDIA ACQUISITION, INC.,                              Case No. 16-10597 (SMB)

                                    Debtor.
-----------------------------------------------------------x

## DEBTOR'S OBJECTION TO MOTION OF DAUM GLOBAL HOLDINGS CORP. TO DISMISS CHAPTER 11 CASE

TO THE HONORABLE STUART M. BERNSTEIN,
UNITED STATES BANKRUPTCY JUDGE:

      Ybrant Media Acquisition, Inc., the above-captioned debtor and debtor in

possession (the "**Debtor**"), by its attorneys, Rosen & Associates, P.C., as and for its objection to

the motion (the "**Motion**") of Daum Global Holdings Corp. ("**Daum**") to dismiss its chapter 11

case, respectfully represents:

### PRELIMINARY STATEMENT

      1.     In the Motion, Daum alleges that "cause" exists to dismiss the Debtor's

chapter 11 case, pursuant to section 1112(b) of the Bankruptcy Code, because the Debtor filed its

petition in "bad faith." Daum alleges that it is utterly improbable "that a company so strapped

with debt and devoid of assets as the Debtor could expect in good faith to be revived and

reorganized in Chapter 11." *Motion* at 12. Citing *C-TC Avenue Partnership v. Norton Company*

(*In re C-TC 9th Avenue Partnership*), 113 F.3d 1304 (2d Cir. 1997), Daum asserts that "[t]he CTC factors are present here: (i) Debtor has one asset, the 56% of Lycos shares, that are subject to Daum's lien, which far exceeds the value of the shares; (ii) [i]t has one creditor, Daum, for some $37 million; (iii) [i]t has no employees, no assets, no source of revenue, and no cash flow. (iv) [sic] Moreover, as in CTC, 'the timing of the Debtor's resort to Chapter 11 evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.'" *Motion at 12.*

2.    Daum also asserts, in the alternative, that "cause" exists under section 1112(b)(4)(A) of the Bankruptcy Code, because "the Lycos business itself continues to lose value" and the Debtor does not have a reasonable likelihood of rehabilitation. *Motion* at 16. Daum alleges that "some eleven months have gone by and the Debtor and its Indian parent have been unable to produce the funds to enable any settlement [with [Daum]." *Motion* at 9. Daum also asserts that the Debtor's proposed plan of reorganization offers no prospect of independent survival for the Debtor but would depend on . . . an injection of funds into the Debtor which would have to be borrowed by the Indian parent . . . Without such a borrowing the plan is a nonstarter, yet we have had no corroboration that such a borrowing is feasible." *Id.*

3.    According to Daum, "[t]he terms of the alleged White Oak financing reinforce the negative prospect of the Debtor's rehabilitation because "such a deal would require approval of Judge Nathan of the Southern District and Judge Oing of New York State Supreme Court . . . [and] neither White Oak nor the Debtor has made any approach to Daum in such regard." *Motion* at 13-14. Daum also questions the credibility of Mr. Reddy's representations to this Court concerning the efforts he has made since the petition date on behalf of Lycos to fund the Debtor's plan of reorganization, first, by attempting to obtain an international standby letter

of credit and, most recently, by executing a letter of intent with White Oak.  As evidence of Mr.

Reddy's lack of credibility, Daum points to testimony given by Mr. Reddy in connection with

the ICC Arbitration and "the $175 million that Mr. Reddy failed to find in the Experian/Price

Grabber acquisition in 2012 . . . ."  *Motion* at 13.

       4.      As discussed more fully below, Daum has failed to meet its burden to

demonstrate by a preponderance of the evidence either (a) the Debtor's "bad faith" or (b) that

there is a substantial or continuing loss to or diminution of the Debtor's estate *and* a lack of a

reasonable likelihood of rehabilitation.

## BACKGROUND

       5.      On December 20, 2016, this Court entered an order approving the

Debtor's Second Amended Disclosure Statement with Respect to the Debtor's Amended Plan of

Reorganization dated December 6, 2016 [Document No. 46] and scheduling a hearing to

consider confirmation of such plan for January 26, 2017 (the "**Confirmation Hearing**").

       6.      Thereafter, on January 25, 2017, the Debtor submitted the Declaration of

Suresh K. Reddy, Pursuant to 28 U.S.C. § 1746, in Support of Request for an Adjournment of

the Debtor's Confirmation Hearing and in Response to Objection of Daum Global Holdings

Corp. to Confirmation of the Debtor's Plan of Reorganization (the "**January 2017

Declaration**") [Document No. 54].

       7.      In the January 2017 Declaration, Mr. Reddy, both in his capacity as the

Chief Executive Officer of the Debtor and Lycos Internet, Ltd. ("**Lycos**"), the Debtor's parent,

requested that this Court adjourn for a period of sixty (60) days the Confirmation Hearing to

permit White Oak Global Advisors, LLC ("**White Oak**") to complete its due diligence, issue its

commitment letter, and close on the $150 million senior secured debt financing (the

"**Financing**"), certain proceeds of which will be used by Lycos to fund the Debtor's Amended

Plan of Reorganization dated December 6, 2016. *January 2017 Declaration* at ¶ 2.

8.      In the January 2017 Declaration, Mr. Reddy stated that White Oak was

nearing completion of its financial due diligence, had just provided Lycos with its legal due

diligence requests, and intended to shortly commence its operational due diligence, consisting of

site visits and management interviews. *January 2017 Declaration* at 3.  Mr. Reddy stated that

Acquisto Financial Advisory, LLP ("**Acquisto**"), Lycos' broker, had informed him that it

believed that a closing of the Financing would occur no later than March 31, 2017.

9.      Mr. Reddy also provided this Court with a schedule setting forth each of

White Oak's information requests, as well as the respective dates on which Lycos submitted its

responses.

10.      In response to Mr. Reddy's request for an adjournment, Daum filed a letter

objection (the "**Letter Objection**") on January 25, 2017 in which it reiterated its belief that

Lycos "is seeking to drag out the chapter 11 proceedings to prevent Daum from regaining

possession of the Lycos shares on which it holds a lien pursuant to Judge Nathan's Turnover

Order,[1] to continue draining value from the United States activities, . . . and ultimately forcing

Daum to emerge from this situation, not as an unimpaired creditor as suggested in the debtor's

proposed plan, but as a creditor forced to accept a meager settlement or ownership of the Lycos

subsidiary at a scrap of its original value."[2] *Letter Objection* at 1-2.

---

[1]  The Debtor has reviewed the legal basis for Daum's assertion that it has a lien on the Debtor's assets and is in agreement with Daum.  Although the classification of Daum's claim under the Amended Plan would change, its treatment would not.

[2]  The Amended Plan does not impair Daum's claim.  While the Amended Plan provides for payment in full of Daum's claim or payment pursuant to the terms of an agreement with Daum, as Daum well knows, the Financing is necessary to fund the Debtor's payment obligation under a settlement that Daum has represented it is prepared to accept once the Financing has closed.

11.     At the Confirmation Hearing, this Court stated that certain of the

information contained in the January 2017 Declaration was hearsay, invited Daum to file a

motion to dismiss the Debtor's chapter 11 case, scheduled an evidentiary hearing for March 7,

2017, and directed the Debtor to bring witnesses who could testify as to the status of the

Financing.

## LEGAL ARGUMENT

### The Debtor Did Not Commence its
### Chapter 11 Case in "Bad Faith"

12.     "As the movant, [Daum] has the burden of producing evidence that there

is 'cause' for relief under § 1112(b).  Thereafter, if that burden is met, the Debtor must show that

the relief is not warranted."  *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200

B.R. 514, 519 (Bankr. S.D.N.Y.1996) (citing *In re Lizeric Realty Corp.,* 188 B.R. 499, 503

(Bankr.S.D.N.Y.1995)).

13.     The principle that a chapter 11 case can be dismissed as a "bad faith"

filing is a judicial doctrine and, in this Circuit, the leading case on dismissal for the filing of a

petition in "bad faith" is *C–TC 9th Ave. Partnership*, which in turn relies on *Baker v. Latham

Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.),* 931 F.2d 222 (2d Cir.1991).  Under

these decisions, grounds for dismissal exist if it is clear *on the filing date* that "'there was no

reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it

would eventually emerge from bankruptcy proceedings.'"  *In re General Growth Properties,

Inc.*, 400 B.R. 43, 56 (Bankr. S.D.N.Y. 2009) ((quoting *In re C–TC 9th Ave. Partnership,* 113

F.3d at 1309–10) (quoting *In re Cohoes,* 931 F.2d at 227 (internal citations omitted)).

14.     As stated by Judge Brozman in *In re Kingston Square Assocs.,* 214 B.R.

713, 725 (Bankr.S.D.N.Y.1997), "the standard in this Circuit is that a bankruptcy petition will be

dismissed if *both* objective futility of the reorganization process *and* subjective bad faith in filing

the petition are found." (emphasis in original); *see also In re RCM Global Long Term Capital*

*Appreciation Fund, Ltd.,* 200 B.R. at 520.  The objective futility standard is designed to ensure

that the debtor actually has a potentially viable business in place to protect and rehabilitate.

Lacking this, the chapter 11 case has lost its *raison d'etre.  RCM Global,* 200 B.R. at 520 *(citing*

*Matter of Little Creek Development Corp.,* 779 F.2d 1068, 1073 (5th Cir.1986)).

15.     "Importantly, no one factor is determinative of good faith and a

bankruptcy court "must examine the facts and circumstances of each case in light of several

established guidelines or indicia, essentially conducting an 'on-the-spot evaluation of the

Debtor's financial condition [and] motives.'"  *In re Kingston Square,* 214 B.R. at 725 (quoting *In*

*re Little Creek Development Co.,* 779 F.2d 1068, 1072 (5th Cir.1986)).  "It is the totality of

circumstances, rather than any single factor, that will determine whether good faith exists."  *In re*

*Kingston Square,* 214 B.R. at 725 (citing *Cohoes,* 931 F.2d at 227).

16.     In addition, courts recognize that a bankruptcy petition should be

dismissed for lack of good faith only sparingly and with great caution.  *See Carolin Corp. v.*

*Miller,* 886 F.2d 693, 700 (4th Cir.1989); *see also In re G.S. Distrib., Inc.,* 331 B.R. 552, 566

(Bankr.S.D.N.Y.2005).

17.     Here, Daum relying on *C–TC 9th Avenue Partnership,* which, like many

of the other bad faith cases, involved a single-asset real estate debtor, asserts that many of the *C-*

*TC* indicia are present.  It correctly points out that: (a) the Debtor has one asset; (b) the Debtor

has one (1) creditor; (c) the Debtor has no employees, no assets, no source of revenue, and no

cash flow; and (d) the timing of the Debtor's filing evidences an intent to delay or frustrate the

legitimate efforts of Daum to enforce its rights.  *Motion* at 12.  According to Daum, because the

Debtor lacks the usual indicia of an enterprise, it cannot be rehabilitated.  Daum, however, is

incorrect because the *C-TC* factors "ultimately do no more than assist the exercise of discretion

in deciding when a debtor has improperly invoked the Bankruptcy Code, or is improperly hiding

behind the automatic stay to speculate with the creditor's collateral, because it is not able, or not

trying, to confirm a chapter 11 plan." *In re 68 West 127 Street, LLC*, 285 B.R. at 844.

18.     Here, the Debtor does not fit into the recurring pattern of an operating

enterprise.  It is an investment vehicle that can operate "without the need of hiring many

employees, investing in equipment, leasing office or factory space, or purchasing services or

goods from outside vendors, all the traditional indicia of a typical corporate enterprise."  *RCM*

*Global*, 200 B.R. 520.  Consequently, Daum must establish that the Debtor does not have a

viable business that can be rehabilitated and that remaining in chapter 11, therefore, is

objectively futile.  Daum has made no such showing and apparently has conflated the issue of

whether the Debtor has a viable business with whether the Amended Plan is feasible.  As in *RCM*

*Global*, "[t]he Debtor's business is viable, but whether it will have access to the funds which are

a predicate to its rehabilitation remains to be seen.  Nonetheless, based on the Debtor's stated

intent and apparent ability to reorganize I find that the Debtor has survived the objective futility

test." *RCM Global*, 214 B.R. at 521-22.

19.     Daum also has failed to meet its burden to demonstrate the Debtor's

subjective "bad faith" and has provided no evidence that the Debtor commenced its chapter 11

petition to frustrate and avoid paying Daum.  In fact, the evidence demonstrates that the Debtor

commenced its chapter 11 case for the sole purpose of paying Daum under a plan of

reorganization.

20.     As set forth in the Declaration of Suresh K. Reddy pursuant to 28 U.S.C. §

1746 dated August 2, 2016 [Document No. 24] (the "**August 2016 Declaration**"), the

Declaration of Suresh K. Reddy pursuant to 28 U.S.C. § 1746 dated November 16, 2016

[Document No. 33] (the "**November 2016 Declaration**"), and the January 2017 Declaration,

each of which is incorporated herein by reference, the Debtor commenced its chapter 11 petition

to preserve the *status quo* while it negotiated a settlement with Daum and obtained the necessary

funding to pay Daum's claim under a confirmed plan of reorganization that does not impair

Daum's claim.

21.     As counsel for Daum is aware, Mr. Reddy was in contact with Daum

immediately after the petition date and provided it with a letter of intent under which the Debtor

would pay Daum $16 million on account of its claim; $5 million would be paid upon execution

and $11 million one (1) year later with an international standby letter of credit to be posted at

Daum's request to secure the deferred payment.

22.     Moreover, immediately after the petition date, Mr. Reddy, as Chief

Executive Officer of Lycos, began working to obtain such funding and, as set forth in the August

2016 Declaration and the November 2016 Declaration, negotiated with two (2) Indian banks to

secure the letter of credit and also worked with Acquisto to identify alternative sources of capital

in the event he was unsuccessful in obtaining such letter of credit.  As Daum is aware, Lycos has

executed a letter of intent with White Oak and has been working as expeditiously as possible to

complete the due diligence process.  Financial due diligence now is complete and legal and

operational due diligence are underway.

23.     Thus, there is no evidence to support Daum's contention that the Debtor

commenced its chapter 11 case in "bad faith" for a fundamentally unfair purpose.

8

**Daum Has Failed to Demonstrate Continuing**
**Loss to or Diminution of the Estate and No**
**Likelihood of Rehabilitation**

24.     Daum also has failed to meet its burden to demonstrate a continuing loss

to or diminution to the Debtor's chapter 11 estate and a lack of a likelihood of rehabilitation.

25.     Under section 1112(b)(4)(A) of the Bankruptcy Code, Daum "must prove

not only a continuing loss to or diminution of the estate, but also that there is no likelihood of

rehabilitation." *In re The AdBrite Corp.*, 290 B.R. 209, 214 (internal citation omitted). *See also*

*In re 1031 Tax Group, LLC*, 374 B.R. 78, 93; *In re FRGR Managing Member LLC*, 419 B.R.

576, 582 (Bankr. S.D.N.Y. 2009). Courts must "evaluate losses on a case-by-case basis." *In re*

*The AdBrite Corp.*, 290 B.R. 209, 214. To determine whether there is a continuing loss to or

diminution of the estate, a court must make a full evaluation of the present condition of the

estate, not merely look at the debtor's financial statements. A continuing loss or diminution of

the estate may be tolerated where reorganization is feasible and the pattern of unprofitable

operations can be reversed as a result of a successful reorganization. *Id.*

26.     Thus, courts regularly find a continuing loss or diminution of the estate

where a debtor has a negative cash flow and an inability to pay current expenses. *See, e.g., In re*

*Denrose Diamond*, 49 B.R. 754, 756 (Bankr.S.D.N.Y.1985); *In re 3868–70 White Plains Road,*

*Inc.*, 28 B.R. 515 (Bankr.S.D.N.Y.1983); *In re Photo Promotion Associates, Inc.*, 47 B.R. 454,

459; *In re Pied Piper Casuals, Inc.*, 40 B.R. 723 (Bankr. S.D.N.Y. 1984); *In re The AdBrite*

*Corp.*, 290 B.R. 209, 214.

27.     In addition to establishing a continuing loss or diminution of the estate, a

party moving under section 1112(b) of the Bankruptcy Code must establish the absence of a

reasonable likelihood of rehabilitation. Courts in this Circuit uniformly construe "rehabilitation"

to mean "to put back in good condition and reestablish on a sound basis.  It signifies that the debtor will be reestablished on a secured financial basis, which implies establishing a cash flow from which its current obligations can be met."  *In re 1031 Tax Group, LLC*, 374 B.R. at 93; *In re BH S & B Holdings, LLC*, 439 B.R. 342, 348 (Bankr. S.D.N.Y. 2010).

28.    Finally, although "a court may find that adequate "cause" exists to convert or dismiss a case, case law makes clear that the court still has discretion in deciding whether to grant or deny the motion . . . ."  *In re BH S & B Holdings, LLC*, 439 B.R. at 347.

29.    Here, Daum has failed to offer any evidence in either the Motion or the supporting affidavit of Bo-Yong Park, Esq. that there is a continuing loss to or diminution of the Debtor's estate, which consists of 4,905,498 shares of Lycos Internet, Inc.  It merely asserts "the Lycos business itself continues to lose value."  *Motion* at 16.  There is no evidence that the value of the shares, which Daum estimates to be approximately $6.4 million, has diminished since the petition date.

30.    Without evidence of this, Daum cannot prevail under section 1112(b)(4)(A) of the Bankruptcy Code.

31.    Even if Daum could satisfy this prong, it has not met its burden to demonstrate that there is no reasonable likelihood of rehabilitation.  As set forth above, "rehabilitation" means "to put back in good condition and reestablish on a sound basis.  It signifies that the debtor will be reestablished on a secured financial basis, which implies establishing a cash flow from which its current obligations can be met."  *In re 1031 Tax Group, LLC*, 374 B.R. at 93.  As an investment vehicle, the Debtor's rehabilitation is the Financing itself.

32.     Here, it is obvious that Daum filed the Motion because it doubts the veracity of Mr. Reddy's statements concerning the Financing and believes it should not have to "pay the price of vain delay" *Motion* at 16.  Daum repeatedly questions Mr. Reddy's truthfulness regarding the Financing and urges this Court to "not give much weight to non-binding term sheets or letters of intent regarding outside financing presented by the Debtor and Ybrant Digital." *Id.*

33.     Contrary to Daum's assertion, Lycos has successfully raised approximately $100 million through a combination of equity and debt financing since 2005, the proceeds of which Lycos has used to fund its acquisitions.  A schedule setting forth Lycos' institutional borrowings is annexed hereto as Exhibit "A" and a schedule setting forth Lycos' corporate acquisitions is annexed hereto as Exhibit "B."  Daums's allegation that Lycos' history as an unsuccessful borrower is indicative of the unlikelihood that it will obtain the Financing is a *non sequitur*.

34.     Secondly, contrary to Daum's assertion, Mr. Reddy has not "misrepresented to the Court multiple times." *Motion* at 14.  While Mr. Reddy miscalculated how long it would take to close the Financing, his belief was not a "misrepresentation" to this Court.  Rather, Mr. Reddy believed in good faith that Lycos could satisfy all of White Oak's requirements in a time frame that would enable the Financing to close when he anticipated it would.   Unfortunately, the financing has not proceeded at that pace.

35.     Finally, Daum points to the fact that White Oak has not yet contacted it as "evidence" of a lack of a likelihood of rehabilitation.  However, this, too, is not sufficient to demonstrate by a preponderance of evidence that the Debtor lacks a likelihood of rehabilitation.  In fact, since Lycos received White Oak's legal due diligence request list on January 23, 2017, it

has responded as quickly as possible on behalf of itself and eleven (11) of its subsidiaries and

provided White Oak with most of the requested documents.  The Debtor anticipates that White

Oak will contact Daum in due course and anticipates that White Oak's operational due diligence,

consisting of site visits and management meetings will be complete by the end of March 2017

and that the Financing will close shortly thereafter.

      36.     Based on the above, the Motion must be denied in its entirety.

      WHEREFORE, the Debtor respectfully request that this Court deny the Motion

and grant it such other and further relief as this Court deems just and proper.

Dated:  New York, New York
       February 28, 2017

                ROSEN & ASSOCIATES, P.C.
                Attorneys for the Debtor
                  and Debtor in Possession

                By:  /s/ Nancy L. Kourland
                    Nancy L. Kourland

                747 Third Avenue
                New York, NY 10017-2803
                (212) 223-1100