Hearing date: March 7, 2017<br>Time: 2:00 p.m.

THE LAW OFFICE OF BO-YONG PARK, P.C.
Attorneys for Secured Creditor – Party In Interest
Daum Global Holdings Corp.
2429A 2nd Street
Fort Lee, NJ 07024
(800) 615-6470
Bo-Yong Park
William J.T. Brown

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------ x
  In Re:                                  :        Chapter 11
                                            :
  YBRANT MEDIA ACQUISITION, INC.,    :        Case No.16-10597 (SMB)
                                            :
                            Debtor.        :
------------------------------------------------------ x

**SECURED CREDITOR AND PARTY-IN-INTEREST
DAUM GLOBAL HOLDINGS CORP.'S REPLY IN FURTHER SUPPORT OF ITS
MOTION TO DISMISS DEBTOR'S CHAPTER 11 CASE**

NOW Comes the Movant, Secured Creditor and Party-in-Interest Daum Global Holdings Corp. ("Daum"), by and through its undersigned counsel, and submits this reply in further support of its Motion for dismissal of the above captioned Chapter 11 case of Debtor Ybrant Media Acquisition, Inc. ("Debtor") pursuant to 11 U.S.C. §§105, 305, 349 (b), 1106 and 1112 (b), Federal Rules of Bankruptcy Procedure 1017 (f), 2002 (a) (4), 9013, and 9014 and S.D.N.Y. LBR 9013-1 and 9014-1 and in response to Debtor's February 28, 2017 Objection ("Debtor's Objection") to such Motion.

## BACKGROUND

1.  As the Debtor acknowledges (Debtor's Objection ¶ 5), the Court scheduled a hearing on January 26, 2017 to consider confirmation of the Debtor's plan of reorganization, which Debtor first proposed on November 4, 2016, but on the eve of that confirmation hearing the Debtor requested that the Court adjourn the confirmation hearing for a further sixty (60) days to permit further processing of the loan application that had been submitted by Debtor's Indian parent company to one White Oak Global Advisors LLC ("White Oak"). Debtor's request for adjournment was supported by the declaration of Suresh K. Reddy, the chief executive officer of both Debtor and its Indian parent company (the Reddy "January 2017 Declaration") [Document No. 54] in which Mr. Reddy gave his account of alleged interaction between White Oak and Debtor's parent company respecting the loan application but offered little evidence that White Oak was in fact entertaining or processing the application. Daum objected to the requested adjournment, and the hearing convened as scheduled.

2.  The Debtor also acknowledges that the Court observed at the January 26 hearing that the information contained in the Reddy January 2017 Declaration regarding the anticipated $150 million financing from White Oak was "hearsay" and invited Daum to file a motion to dismiss the Debtor's chapter 11 case and directed the Debtor to produce at the hearing on such motion witnesses who could testify as to the status of the White Oak financing which would implement the Debtor's plan. Debtor's Objection, ¶11.

**Debtor Repeats Its "Hearsay" Statements And Contemplates Further Delay of Proceeding**

3.  The Debtor is correct when it states that "it is obvious that Daum filed the Motion because it doubts the veracity of Mr. Reddy's statements concerning the Financing." Debtor's

2

Objection, ¶32. Such doubt is entirely justified and would have been perceived by the Court at the January 26 hearing when the Court directed Daum to file the present motion and ordered the Debtor to produce witnesses to corroborate Mr. Reddy's "hearsay" statements. Mr. Reddy's imputation of intentions to White Oak, a silent party who has made no appearance here, can only be corroborated by White Oak itself.

4. Despite the Court's observation that Mr. Reddy's January 2017 Declaration was hearsay and its directive as to Debtor's production of witnesses, the Debtor's Objection was unaccompanied by any affidavit of White Oak or even any further declaration of Mr. Reddy. Despite the absence of corroboration from White Oak, however, the Debtor's counsel appears to contemplate a further request for adjournment or extension. On January 24, Mr. Reddy had stated that:

> [Based on statements of Ybrant's broker] a **closing on the Financing** will occur no later than March 31, 2017. Based on the above, I respectfully request that this Court adjourn the January 26, 2017 confirmation hearing for sixty (60) days, which will permit Lycos to **close on the Financing**, negotiate a settlement agreement with Daum, and **fund the Plan**.

Reddy January 2017 Declaration, ¶¶ 11-12 (emphases added).

This meant that by March 26, 2017 (i.e., 60 days after the Debtor's extension request), the White Oak financing would close and the Plan would be funded. Now, however, the Debtor says that "White Oak's operational due diligence, consisting of site visits and management meetings will be complete by the end of March 2017 and that *the Financing will close shortly thereafter*." Debtor's Objection, ¶35. Site visits and operational due diligence are of course well and good but the closing of the financing and verification of the ability of Debtor's parent to repay the financing are of course the nub of the matter. If this is not to be dealt with until

3

"shortly" after the end of March we are no nearer to resolution than we were last November. How short is shortly the Debtor does not advise, nor does White Oak.

5.  These continuously changing stories are the background for this pending motion. Mr. Reddy caused the Debtor's counsel to state that an international bank guaranty of $11 million would be in place by mid-September 2016, which did not happen.  Debtor's Motion Extending the Exclusivity Periods, dated July 12, 2016 [Doc 20], ¶18.  On November 22, 2016 Mr. Reddy represented firmly in open court that only "two or three weeks" would suffice for the White Oak financing to close.  More than two months later, however, Mr. Reddy requested an additional 60 days to "close on the Financing … and fund the Plan." Reddy January 2017 Declaration, ¶12.  Now it is evident that even the grant of that 60 day extension would not have sufficed.

6.  Counsel for Debtor asserts that Mr. Reddy's representation to the Court was not a "misrepresentation" because he honestly believed it in good faith.  According to the Debtor's counsel, it was simply a "miscalculation."  The problem is that Mr. Reddy's statement that "the Financing will occur no later than March 31, 2017" might be another miscalculation and there is no guarantee that this will be the last one.  At this juncture, Daum respectfully draws the Court's attention to the ICC arbitrators' findings that "the evidence of Mr Reddy [is] *highly unsatisfactory in material respects* ... Mr Reddy's attempts in cross-examination to distance Ybrant and himself from knowledge of Lycos' financial situation *wholly implausible* … The Tribunal is *unable to accept* Mr Reddy's evidence in relation to the Escrowed Shares  … Indeed, much of Mr Reddy's evidence on the quality of the traffic and about Mr Lim was *based on supposition and inference and was not supported by any documentary evidence* which, if it

4

exists, could and should have been produced to the Tribunal." See Motion, ¶39. Just as Mr. Reddy appeared to distance himself from reality in the arbitration proceedings, he appears to take the same approach before this Court in regard to the White Oak financing.

7. Furthermore, the financing process laid out by counsel for Debtor differs materially from that explained by Mr. Reddy. Counsel for Debtor asserts that "The Debtor … anticipates that White Oak's operational due diligence, consisting of site visits and management meetings will be complete by the end of March 2017 and that the Financing will close shortly thereafter." Debtor's Objection, ¶35. But on January 24 Mr. Reddy stated that the Debtor needed adjournment "to permit White Oak to complete its due diligence, *issue its commitment letter*, and close on the Financing." (emphasis added). The Debtor has not explained to the Court or creditors what this "commitment letter" is about or what follows after the commitment letter is issued. If there will be additional conditions or steps to be taken after the commitment letter, again another delay is to be feared.

**Debtor's Plan Is Objectively Futile And Subjectively In Bad Faith**

8. The Debtor also falls short in its reliance on technical legal argument. Citing *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514 (Bankr.S.D.N.Y.1995), the Debtor maintains that, even though it is undisputed that the Debtor has no employees, revenues, cash, or assets other than the 56% shares of Lycos, Inc. ("Lycos"), which are subject to Daum's priority lien, Daum has failed to establish that the Debtor lacks a viable business that can be rehabilitated. Debtor's Objection, ¶18. Debtor argues that "[a]s an investment vehicle, the Debtor's rehabilitation is the Financing itself." Debtor's Objection, ¶31. In other words, Debtor contends that if its parent company can borrow money to invest in it to

5

resolve its current indebtedness it could resume its prior existence as an asset-free off the shelf company awaiting usage as an investment vehicle for its parent company.

9. But *RCM Global* should be distinguished from this case because there the debtor was a mutual fund which did not need employees or dedicated office premises to carry on its trading activities, while the Debtor here is a corporation with no business other than passively holding just a stock certificate which is subject to Daum's lien. It has been used once as an investment vehicle by its parent with dire consequences and little prospect of repeat business. Furthermore, in *RCM Global* the court based its denial of the motion to dismiss on grounds, *inter alia*, that "[n]o plan has been put forth, but the initial exclusivity period provided by § 1121(d) has not yet expired. Given the early stages of this reorganization case, I believe that it is too early to make the determination … The Debtor should be given the opportunity to propose a plan which can be scrutinized by the parties and this court." (citing *In re Toyota of Yonkers, Inc.,* 135 B.R. 471(Bankr.S.D.N.Y.1992) (citing to *Theatre Holding Corp. v. Mauro,* 681 F.2d 102, 106 (2d Cir.1982); *In re Hempstead Realty Assocs.,* 38 B.R.287, 290 (Bankr. S.D.N.Y.1984)). 200 B.R. at 524. Here, the Debtor's exclusivity period expired long ago, the Debtor proposed a plan three months ago, the Court approved the plan and gave the Debtor 60 days to obtain necessary funding to implement the plan but the Debtor failed to obtain any financing. In fact, for a year the Debtor says it has attempted to obtain financing to no avail.

10. The Debtor also maintains that Daum has failed to provide evidence that the Debtor commenced this chapter 11 case to frustrate and avoid paying Daum. The repeated misrepresentations by Mr. Reddy to the Court regarding Daum's agreement to settle, an $11 million standby letter of credit and the timing, process and progress of the White Oak financing and the repeated requests for extension and adjournment based on uncorroborated stories

6

constitute ample evidence of bad faith.  The fact that the Debtor was seeking to evade the Turnover Order issued by Judge Nathan speaks for itself.

**Debtor's Failure To File Operating Reports And The Existence Of A Preliminary Injunction Of New York State Supreme Court Show Continuing Loss To Or Diminution In Value Of Daum's Collateral**

11. The Debtor has now conceded in footnote 1 of its Objection that it "is in agreement with Daum" that Daum "has a lien on the Debtor's assets" and therefore " the classification of Daum's claim under the Amended Plan would change" from unsecured to secured.  As shown in our Motion, ¶¶ 16-19, 27-29 and Exhibits G and H to Park Declaration accompanying the Motion, Daum's secured status results from issuance by the federal district court on October 6, 2015 of a Turnover Order pursuant to CPLR 5225(a) directing the Debtor herein to deliver to the sheriff or marshal for benefit of Daum the share certificates of Lycos representing ownership of 56% of that company (being the sole material asset of Debtor as shown in Debtor's filings herein).  As further shown in the above-cited portions of our Motion such Turnover Order was also directed to the Debtor's Indian Parent, purported creditor herein Ybrant Digital Ltd. (a/k/a Lycos Internet Ltd.), and the Turnover Order by the same cited authority, CPLR 5225(a), ordered Ybrant Digital to turn over for benefit of Daum the share certificates representing its ownership of its worldwide subsidiaries, as listed on Exhibit H to the Park Declaration accompanying the Motion.  The listed subsidiaries include the Debtor herein and accordingly, the Turnover Order having been disobeyed and disregarded, Daum holds a lien on the Indian Parent's 100% interest in the equity of Debtor.

12. Daum's right to enforce its judgment against the Debtor for some $37 million and to enforce the Turnover Order by Judge Nathan should not be impeded by the Indian Parent's

implausible and indefinite search for funding. Daum's right as a secured creditor was interrupted for more than a year by Debtor's bad faith resort to Chapter 11. Before the filing of its Chapter 11 petition, the Debtor was subject to Justice Oing's preliminary injunction as well as Judge Nathan's Turnover Order which allowed Daum to monitor and protect its interest in Lycos by way of discovery and, if necessary, by seeking both courts' intervention. For a year the Debtor took advantage of the automatic stay and disclosed no information on the deteriorating business of Debtor's subsidiary, Lycos. Thus, the Debtor's argument that Daum has failed to show that "there is a continuing loss to or diminution of the Debtor's estate, which consists of 4,905,498 shares of Lycos" (Debtor's Objection, ¶29) is ironic. In fact, the Debtor has filed no operating report after August 31, 2016, let alone detailed financial statements of Lycos, in clear violation of the Bankruptcy Code.

13. Since the interest of Daum and Debtor are diametrically opposed as regards the fate of Lycos, only the worst can be imagined. It is self-evidently in Debtor's interest to transfer as much of Lycos' tangible and intangible assets to its Indian Parent while Debtor and its parent continue their course of nonpayment of the $37 million judgment. This is why Justice Oing enjoined Ybrant Digital and the Debtor from "taking cash … from Lycos, Inc., or otherwise diminishing the value of Lycos, Inc. shares in which [Daum] holds a security or ownership interest." See Exhibit C to Park Decl. The Debtor reported in this chapter 11 proceeding that Lycos lent $1,875,201 to the Debtor. This debt appears to be in violation of Justice Oing's injunction and constitutes prima facie evidence of contumacy and bad faith. Kept in the dark, we can only fear that the same effort to deplete the assets of Lycos has continued during the past year.

## CONCLUSION

For the reasons set forth above, the Motion of Secured Creditor Party-In-Interest Daum for dismissal of Debtor's Chapter11 Case should be granted and the Court is requested to grant such other and further relief as may be proper.

                                      Respectfully submitted,

Dated: Fort Lee, New Jersey       THE LAW OFFICE OF BO-YONG PARK, P.C.
       March 3, 2017

                                      By: /s/ Bo-Yong Park

                                      Bo-Yong Park (BP1622)
                                      William J.T. Brown (WB1306), Of Counsel
                                      2429A 2nd Street
                                      Fort Lee, NJ 07024
                                      (800) 615-6470
                                      Attorneys For Daum Global Holdings Corp.